Philip and Dorothy KORWEK, Marty Finkelstein, William L. Cohn and James G. Williams, Plaintiffs,

v.

Nelson Bunker HUNT, William Herbert Hunt, Lamar Hunt, International Metals Investment Co., Ltd., Sheik Mohammet Aboud Al-Amoudi, Sheik Ali Bin Mussalem, Faisal Ben Abdullah Al Saoud, Mahmoud Fustok, Naji Robert Nahas, Bache Halsey Stuart Shields, Inc., Bache Group, Inc. (Prudential Bache Securities, Inc.), Merrill Lynch, Pierce Fenner & Smith, Inc., Conticommodity Services, Inc., Conti-Capital Management, Inc., Conti-Capital Ltd., Norton Waltuch, Melvin Schnell, Gilion Financial, Inc., Banque Populaire Suisse, Advicorp Advisory and Financial Corporation, S.A., Commodity Exchange, Inc., the Board of Trade of the City of Chicago, Donaldson, Lufkin & Jenrette Acli Futures, Inc., formerly Acli International Commodity Services, Inc., Litardex Traders, S.A., Walter Goldschmidt, Continental Grain Co., Defendants.

No. 84 Civ. 7934 (MEL).

United States District Court,
S.D. New York.

Oct. 24, 1986.

Deutsch and Frey, New York City, for plaintiffs; of counsel: Herbert I. Deutsch, Robert E. Frey, Richard L. Weingarten, John M. Martin, Law Clerk.

Shank, Irwin & Conant, Roger Goldburg, Roderic G. Steakley, Robert E. Wolin, Dallas, Tex., for Nelson Bunker Hunt, William Herbert Hunt and Lamar Hunt.

Sullivan & Cromwell, Marvin Schwartz, Richard H. Klapper, Marcy Engel, New York City, for Bache Group Inc. and Prudential-Bache Securities, Inc.

Rogers & Wells, William R. Glendon, Guy C. Quinlan, Susan A. Garcia, New York City, for Merrill Lynch, Pierce, Fenner & Smith, Inc. and Donaldson, Lufkin and Jenrette Futures, Inc.

Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey, Paul L. Perito, John P. Wintrol, Robert E. Pokusa, Washington, D.C., and Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey, Jerome Kowalski, New York City, for Intern. Metals Inv. Co., Ltd.

John R. Bartels, Jr., New York City, and Kaye, Scholer, Fierman, Hays & Handler, Steven J. Glassman, New York City, for Norton Waltuch.

Skadden, Arps, Slate, Meagher & Flom, Erskine Henderson, New York City, for Mel Schnell.

Paul, Weiss, Rifkind, Wharton & Garrison, Mark A. Alcott, Richard A. Rosen, New York City, for Conticommodity Services, Inc. and Conti-Capital Ltd.

Sidley & Austin, Marc J. Gottridge, for Continental Grain Co.; of counsel: Lawrence H. Hunt, Jr., David T. Pritikin, Sidley & Austin, Chicago, Ill., Sheldon L. Berens, Gen. Counsel, Continental Grain Co., New York City.

Parker, Auspitz, Neesemann & Delehanty, P.C., New York City, for Walter M. Goldschmidt; of counsel: Jack C. Auspitz, Hollis L. Hyans.

LASKER, District Judge.

This class action is brought by five named plaintiffs on behalf of themselves and a proposed class of short sellers of silver futures contracts who traded between July 3, 1979 and February 26, 1980 against a number of defendants, including individuals, firms, and commodities exchanges. Plaintiffs allege that all defendants other than the exchanges attempted to manipulate the price of silver and silver futures and conspired to monopolize the market for silver and silver futures with the result that silver prices climbed to artificially high levels and plaintiffs were forced to liquidate their short positions at a substantial loss.

The complaint charges the non-exchange defendants with violations of Sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1–2 (counts I & II); violations of the Clayton Act, 15 U.S.C. §§ 12–27 (count III); violations of New York antitrust law, N.Y. Gen. Bus. Law § 340 (count IV); violations of Sections 9(b) and 4b of the Commodity Exchange Act ("CEA"), 7 U.S.C. §§ 13(b) and 6b (counts V & VI); common law fraud (count VII); and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68 (count IX). First Amended Complaint

¶¶ 223–30, 232–36 (filed Feb. 22, 1985).[1] Certain of the non-exchange defendants (hereinafter "defendants")[2] move to dismiss these claims—both as asserted by the proposed class and as asserted by the named plaintiffs individually—on the ground that they are barred by the applicable statutes of limitations. Defendants also move to dismiss the CEA § 4b claim for failure to state a cause of action.

The complaint is identical in its claims to that filed in a related, pending litigation before this court. *See Gordon v. Hunt*, No. 82–1318 (MEL) (S.D.N.Y. filed March 4, 1982). The plaintiff in *Gordon* sought to certify a class of those traders who sold silver futures contracts short and suffered a loss therefrom during the period August 7, 1979 through March 26, 1980. The *Gordon* class was certified on July 19, 1983, but limited to those persons who traded silver futures contracts during the period in August-September 1979 when the named plaintiff traded. *See Gordon v. Hunt*, 98 F.R.D. 573 (S.D.N.Y.1983). Subsequently, four of the five individuals who are named plaintiffs in the instant case filed a motion to intervene and expand the class in *Gordon*. Notice of Motion To Intervene and Expand the Class (filed Oct. 19, 1983). That motion was denied. *Gordon v. Hunt*, No. 82–1318, slip op. (Oct. 30, 1984) [Available on WESTLAW, DCTU database].

The present class action was filed on November 2, 1984, three days after the motion to intervene and expand the class in *Gordon* was denied. The proposed class in this case is represented by the following named plaintiffs, whose states of residence and the periods during which they held short positions in the market are as follows:

| Philip & Dorothy | | |
|---|---|---|
| Korwek | Michigan | 8/14/79–10/12/79 |
| Marty Finkelstein | Pennsylvania | 7/2/79– 7/27/79 |
| | | 8/16/79– 8/18/79 |
| | | 9/5/79– 9/13/79 |
| William L. Cohn | Massachusetts | 12/5/79– 2/26/80 |
| James Williams | Colorado | 8/31/79– 11/7/79 |

Exhibit A to Complaint, *Korwek v. Hunt*, No. 84–7934 (filed Nov. 2, 1984); Amendment to Complaint By Stipulation Nunc Pro Tunc (filed June 19, 1985) (adding Williams as named plaintiff).[3]

## I. Statute of Limitations

The latest acts attributed by the complaint to any of the defendants occurred in May 1980. First Amended Complaint ¶¶ 124, 191. Consequently, absent any tolling effects, at the time this action was initiated on November 2, 1984, plaintiffs' claims were at least four years and five months old, and any causes of action governed by limitations periods of four years or less would accordingly have been time-barred.

Plaintiffs contend, however, that (1) the running of all applicable statutes of limitations was tolled by the defendants' fraudulent concealment of their alleged conspiracy and the plaintiffs' resulting inability to discover the actionable wrongs earlier than February 1985; (2) the defendants are estopped from raising statute of limitations defenses to the class action claims because they opposed notice to the proposed *Gordon* class in August 1983, shortly following the decision on the *Gordon* class certification motion; and (3) the filing of the *Gor-*

1. The complaint alleges in count VIII that the Commodity Exchange, Inc. and the Board of Trade of the City of Chicago "intentionally, recklessly or negligently, out of their own self-interest, failed to maintain an orderly market in silver futures contracts in violation of Sections 5(d) and 5a(8) of the [CEA]." First Amended Complaint ¶ 231. The exchange defendants have not moved to dismiss this claim.

2. The moving defendants are: Nelson Bunker Hunt; William Herbert Hunt; Lamar Hunt; International Metals Investment Company, Ltd.; Bache Group, Inc.; Prudential-Bache Securities,

Inc.; Mel Schnell; Norton Waltuch; Merrill Lynch, Pierce, Fenner & Smith, Inc.; Donaldson, Lufkin and Jenrette Futures, Inc.; Conti-Commodity Services, Inc.; ContiCapital Ltd.; Continental Grain Company; and Walter M. Goldschmidt.

3. Although plaintiffs have not pleaded Williams' residence, he is conceded to be a resident of Colorado. *See* Memorandum of Law in Support of Motion of Defendant Continental Grain Company To Dismiss the Amended Complaint at 12 n.* & Exhibit A.

*don* class action and the related motion to intervene and expand the class tolled the running of all applicable statutes of limitations as to the present class action under the rule established by the Supreme Court in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), and *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983).

### A. Equitable Tolling Premised on Defendants' Fraudulent Concealment

Plaintiffs assert that the defendants fraudulently concealed their alleged conspiracy to manipulate the price of silver and silver futures, and that the plaintiffs were thereby prevented from discovering their causes of action until February 28, 1985, when the Commodity Futures Trading Commission ("CFTC") filed an administrative complaint against some of the defendants alleging a conspiracy to manipulate the market. Plaintiffs point to specific allegations in the complaint charging that various defendants misrepresented or withheld information from the CFTC and the Commodity Exchange, Inc. which had the effect of concealing the conspiracy (First Amended Complaint ¶¶ 58(k)(1), 94(a)-(e), 183(a)-(d), 186, 187, 197, 208), and argue that if the CFTC was unable to formulate and file a complaint before February 1985, plaintiffs—with significantly fewer resources than a national regulatory body—could not have been expected to do so.

The standard applicable to a claim of equitable tolling was set out by the Court of Appeals for this circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir.1974):

> Once it appears that the statute of limitations has run, the *plaintiff* must sustain the burden of showing not merely that he failed to discover his cause of action prior to the running of the statute of limitations, but also that he exercised due diligence and that some affirmative act of fraudulent concealment frustrated discovery notwithstanding such diligence.

*Id.* at 461 (citations omitted) (emphasis in original). The Court of Appeals has also held that "the time from which the statute of limitations begins to run is not the time at which a plaintiff becomes aware of all of the various aspects of the alleged fraud, but rather the statute runs from the time at which plaintiff should have discovered the general fraudulent scheme." *Berry Petroleum Co. v. Adams & Peck*, 518 F.2d 402, 410 (2d Cir.1975).

■ Even were plaintiffs' allegations of fraudulent concealment on the part of defendants sufficiently pleaded—an issue we do not reach here—plaintiffs have failed to carry their burden of showing that they did not discover their causes of action well in advance of February 1985 and that they could not with due diligence have made such a discovery.

Plaintiffs had the opportunity to learn of the general fraudulent scheme which is at the heart of their complaint in a number of ways. First, there were the several lawsuits filed beginning in 1979 alleging the same conspiracy against many of the same defendants as plaintiffs charge in this case. *See, e.g., Strax v. Commodity Exchange, Inc.*, 79 Civ. 5366(MEL) (SDNY); *Zeltser v. Hunt*, 80 Civ. 4009(KTD) (SDNY); *Minpeco, S.A. v. ContiCommodity Services, Inc.*, 81 Civ. 7619(MEL) (SDNY). The filing of lawsuits by private parties has been held in this circuit to put plaintiffs on notice of their potential claims. *See Berry Petroleum*, 518 F.2d at 410. Second, as early as March 1980 public investigations including hearings before congressional committees had commenced which scrutinized the activities of many of the defendants in connection with the collapse of the silver market. *See, e.g.,* Silver Prices and the Adequacy of Federal Actions in the Marketplace, 1979–80: Hearings Before the Subcomm. on Commerce, Consumer, and Monetary Affairs of the House Comm. on Government Operations, 96th Cong., 2d Sess. Moreover, reports on the subject were issued by the CFTC as early as May 1980. *See, e.g.,* Report of the Commodities Futures Trading Commission on Recent Developments in

the Silver Futures Markets, Senate Comm. on Agriculture, Nutrition and Forestry, 96th Cong., 2d Sess. (Comm.Print 1980). Finally, there was such substantial media coverage of the events which form the basis for plaintiffs' claims that in a related litigation we took judicial notice that "[r]egular newspaper readers know what this case is about." *Minpeco, S.A. v. ContiCommodity Services, Inc.*, 552 F.Supp. 327, 331 (S.D.N.Y.1982).

The existence of the foregoing opportunities militates against even the possibility that plaintiffs could not, with the exercise of due diligence, have learned of the general scheme in which defendants are charged to have participated. It is plaintiffs' burden to show they were actually prevented from discovering their causes of action. They have failed to carry the burden.

Plaintiffs' argument that they could not have discovered defendants' alleged wrongs before the CFTC filed its civil enforcement action in February 1985 is somewhat puzzling. For even if, as plaintiffs contend, the fact that the CFTC took five years to file a complaint demonstrates that it was difficult to discover the facts surrounding the claimed conspiracy, plaintiffs appear to have borrowed little from the CFTC's learning since the amended complaint in this action is virtually identical to that filed in 1982 in the *Gordon* action. In any event, that plaintiffs were able to file a detailed complaint in this action in November 1984, months before the filing of the CFTC complaint, simply belies any argument that facts about the alleged conspiracy were not a matter of public knowledge until February 1985.[4]

The running of the applicable statutes of limitations was not tolled, therefore, based upon defendants' fraudulent concealment of their activities.

### B. Estoppel

■ Plaintiffs argue in the alternative that defendants are estopped from asserting statute of limitations bars to the class claims on the ground that some of the defendants opposed notice to the class in August 1983, shortly after the decision on the *Gordon* class certification motion. *See* Affidavit in Opposition to Motions by Various Defendants To Dismiss the Complaint, Exhibit B at 6–7 & Exhibit C at 3. Plaintiffs appear to be contending that such opposition to class notice in *Gordon* may have delayed the filing of this class action by postponing notification to potential members of the current proposed class that they had been excluded from the certified *Gordon* class, and thus that defendants cannot now be heard to complain that the action is time barred.

The logic of plaintiffs' argument is unclear. Even if the actions of a few defendants were sufficient to work an estoppel as to all defendants—a doubtful proposition—the plaintiffs would still not be entitled to such broad estoppel protection. First, it is not the purpose of a class action notice to inform those who have been excluded from a proposed class that they can no longer rely on that class action to represent their interests; rather it is to enable those who are *included* in the certified class to opt out of the class and to inform such class members that a judgment in the action will bind all those members who do not request exclusion. *See* Fed.R.Civ.P. 23(c)(2). Sec-

---

**4.** Plaintiffs cite the case of *Clark v. United States*, 481 F.Supp. 1086 (S.D.N.Y.1979), *appeal dismissed*, 624 F.2d 3 (2d Cir.1980), as standing for the proposition that equitable tolling applies in situations in which the wrongful acts of defendants are carried out in a covert manner so as to prevent plaintiffs from learning of the wrongs. *See id.* at 1095. In *Clark*, however, there was no indication that defendants' secret program of illegal government surveillance of individuals was the subject of intense publicity and congressional scrutiny which might have informed plaintiffs of the existence of a conspir-

acy. Furthermore, although the statute of limitations in *Clark* was held to be tolled until the date a criminal indictment of several of the defendants was filed, prior to that time no civil actions had been brought against defendants that would have alerted plaintiffs to their potential causes of action. In the instant case, in contrast, plaintiffs' suggested analog to the criminal indictment in *Clark* —the CFTC complaint—was preceded by a number of civil actions against many of the same defendants, which were sufficient to notify plaintiffs of their causes of action.

ond, it is difficult to discern any prejudice suffered by the present class as the result of opposition to class notice by some defendants in August 1983. By the time in October 1983 when the motion to intervene and expand the class in *Gordon* was filed, enough people had apparently learned of the decision to limit the *Gordon* class to traders who maintained short positions between August 8 and September 4, 1979 to enable all of the named plaintiffs who subsequently brought this action in November 1984 to participate in the motion to intervene. In short, regardless of any obstacles to class notice created by any defendants, all of the named plaintiffs who brought the present action in November 1984 (the relevant date for limitations purposes) were on hand in October 1983. Moreover, any prejudice suffered by the class as the result of the decision of the plaintiffs' attorney not to file a new class action in October 1983 is not attributable to any lack of awareness on the part of potential class members that they were not included in the *Gordon* class.

For these reasons, defendants are not estopped from asserting that plaintiffs' class claims are time barred.

## C. Class Action Tolling Under The Rule Of *American Pipe* and *Crown Cork*

Plaintiffs contend that under the rule established by the Supreme Court in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), and *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983), the prior filing of the class action in *Gordon* had the effect of tolling the statutes of limitations as to the individual and class claims asserted in this case. If the plaintiffs' position is correct, only a little over two years would have run on the applicable statutes of limitations between the latest date on which plaintiffs' causes of action could have accrued (May 1980) and the initial filing of the present complaint (November 1984), since the running of the statutes would have been tolled during the period between the filing of the *Gordon* class action (March 1982) and the certification of the class (July 1983) and

between the filing of the motion to intervene and expand the class (October 1983) and the denial of that motion (October 1984). Such a toll would be significant because, as discussed below, the shortest limitations period applicable to plaintiffs' claims is three years.

### The Class Action Tolling Rule

In *American Pipe* purported members of a class which the trial court had refused to certify sought to intervene in the residual plenary action after the statute of limitations on their claims had run. 414 U.S. at 540–44, 94 S.Ct. at 759–61. In reversing the Ninth Circuit Court of Appeals' affirmance of the trial court's denial of the motions to intervene, the Supreme Court stated:

> We are convinced that the rule most consistent with federal class action procedure must be that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.

*Id.* at 554, 94 S.Ct. at 766. The Court reached this conclusion with an eye on the principal purposes of the class action procedure—promotion of efficiency and economy of litigation.

> A contrary rule allowing participation only by those potential members of the class who had earlier filed motions to intervene in the suit would deprive Rule 23 class actions of the efficiency and economy of litigation which is a principal purpose of the procedure. Potential class members would be induced to file protective motions to intervene or to join in the event that a class was later found unsuitable. In cases such as this one, where the determination to disallow the class action was made upon considerations that may vary with ... subtle factors ..., a rule requiring successful anticipation of the determination of the viability of the class would breed needless duplication of motions.

*Id.* at 553–54, 94 S.Ct. at 766. The Court concluded that such a rule was not inconsistent with the purposes of statutes of limitations—to put defendants on notice of adverse claims and to enforce defendants' right to be free of stale claims.

> The policies of ensuring essential fairness to defendants and of barring a plaintiff who "has slept on his rights," *Burnett v. New York Central R. Co.,* 380 U.S. 424, 428, [85 S.Ct. 1050, 1054, 13 L.Ed.2d 941] are satisfied when, as here, a named plaintiff who is found to be representative of a class commences suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment. Within the period set by the statute of limitations, the defendants have the essential information necessary to determine both the subject matter and size of the prospective litigation, whether the actual trial is conducted in the form of a class action, as a joint suit, or as a principal suit with additional intervenors.

*Id.* at 554–55, 94 S.Ct. at 766–67 (footnote omitted).

Almost a decade later, in *Crown Cork,* the Supreme Court addressed the question of whether the tolling rule of *American Pipe* applies to those putative class members who choose to file plenary individual actions after the denial of class certification or only to those who, like the plaintiffs in *American Pipe,* seek to intervene. 462 U.S. at 346–49, 103 S.Ct. at 2393–95. In holding that the tolling rule also applied to plenary individual suits, the Court stated:

> While *American Pipe* concerned only intervenors, we conclude that the holding of that case is not to be read so narrowly. The filing of a class action tolls the statute of limitations "as to all asserted members of the class," *id.* [414 U.S.] at 554, [94 S.Ct. at 766] not just as to intervenors.

> · · · · ·

> Much the same inefficiencies [as described in *American Pipe* ] would ensue if *American Pipe*'s tolling rule were limited to permitting putative class members to intervene after the denial of class certification. There are many reasons why a class member, after the denial of class certification, might prefer to bring an individual suit rather than intervene. . . . Moreover, permission to intervene might be refused for reasons wholly unrelated to the merits of the claim. A putative class member who fears that class certification may be denied would have every incentive to file a separate action prior to the expiration of his own period of limitations. The result would be a needless multiplicity of actions—precisely the situation that Federal Rule of Civil Procedure 23 and the tolling rule of *American Pipe* were designed to avoid.

*Id.* at 350–51, 103 S.Ct. at 2395–96 (footnote omitted). The Court also concluded, as it had in *American Pipe,* that the purposes of statutes of limitations would not be frustrated by such an application of the tolling rule. "Class members who do not file suit while the class action is pending cannot be accused of sleeping on their rights; Rule 23 both permits and encourages class members to rely on the named plaintiffs to press their claims." *Id.* at 352–53, 103 S.Ct. at 2396–97. And with regard to notice, "[t]he defendant will be aware of the need to preserve evidence and witnesses respecting the claims of all the members of the class. Tolling . . . thus creates no potential for unfair surprise, regardless of the method class members choose to enforce their rights upon denial of class certification." *Id.* at 353, 103 S.Ct. at 2397.

### *Claims Outside The Class Action Tolling Rule's Coverage*

▪ The issue presented in this case—undecided by the Supreme Court or by our Court of Appeals—is whether the Supreme Court's tolling rule applies to subsequently filed *class* actions. Before examining the proposition, it is to be noted that there are claims in this litigation which are not affected by the answer to this question.

First, the claims asserted by plaintiffs on an individual—as opposed to a representative—basis are (with the exception of claims based on Finkelstein's July 1979 trading and claims asserted against Continental Grain Company and Walter M. Goldschmidt) clearly covered by the holding in *Crown Cork*. Under the rule announced in that case, the filing of the *Gordon* class action tolled the running of the limitations periods applicable to individual claims of all those in the proposed *Gordon* class until the motion to certify the class and the motion to expand the class were decided. With the exception of the three-month period between the certification of the limited class and the filing of the motion to expand the class, the status of the putative class members in *Gordon* was not determined and thus the statutes of limitations did not run during those periods. In short, as to their individual claims (with the exceptions noted above), plaintiffs have the benefit of the toll without the need for an extension or broad reading of the *American Pipe-Crown Cork* rule.

■ The situation is different with respect to both individual and class claims based on Finkelstein's July 1979 trading. Even the most expansive reading of the Supreme Court's holdings would only permit the suspension of statutes of limitations as to those "asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Crown Cork*, 462 U.S. at 353–54, 103 S.Ct. at 2397 (quoting *American Pipe*, 414 U.S. at 554, 94 S.Ct. at 766). Since the proposed class in *Gordon* did not encompass those who held short silver futures positions in July 1979, Finkelstein's individual claims and any class claims based on the short positions he opened and closed out within July 1979 do not benefit from the Supreme Court's tolling rule. Regard-

less whether the tolling rule applies to subsequently filed class actions, the July 1979 trading claims are subject to limitations periods that ran continuously since the causes of action accrued.

■ Similarly, none of the claims asserted against defendants Continental Grain Company and Walter M. Goldschmidt is affected by any formulation of the *American Pipe* tolling rule because those defendants were not brought into this action until 1985—well after all motions relating to the certification of the *Gordon* class had been decided.[5] "Claims as to which the defendant was not fairly placed on notice by the class suit are not protected under *American Pipe*...." *Crown Cork*, 462 U.S. at 355, 103 S.Ct. at 2398 (Powell, J., concurring, joined by Rehnquist and O'Connor, JJ.).

### Contentions Of The Parties As To Class Action Tolling

The question remains, however, whether the filing of the *Gordon* complaint and related motions as to the status of the class in that case acted to toll the running of statutes of limitations as to the class claims in this case. Defendants[6] argue that "[n]othing in the Supreme Court's opinions in *American Pipe* or *Crown Cork* can be construed to expand the tolling principles announced therein to apply to the commencement of a subsequent class action following denial of class certification in the original proceeding." Defendants' Memorandum at 4. They quote the concluding language of *Crown Cork*—

"Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending

---

5. Continental Grain was named as a defendant in this case in February 1985. Goldschmidt was brought into the case in August 1985. Reply Memorandum of Law In Support Of Motion Of Defendants Continental Grain Company and Walter M. Goldschmidt To Dismiss The Amended Complaint at 4 & n. **.

6. The reference to "defendants" in this sub-section of the memorandum does not include moving defendants Continental Grain and Goldschmidt, since they do not argue the question of the tolling rule's applicability to the class claims.

action." 462 U.S. at 354, 103 S.Ct. at 2397.

—and apparently reason by negative implication that the Supreme Court did not intend, because it did not mention, that the tolling rule should apply to subsequent class actions. Defendants also argue that application of the tolling rule to subsequent class actions would permit the filing in perpetuity of additional class actions, since each successive class action would continue the toll until a determination of class certification was made.

Although there appears to be no decision by the Supreme Court or any circuit court which addresses this question, defendants cite three district court decisions which support their position. *See Smith v. Flagship International,* 609 F.Supp. 58, 63–64 (N.D.Tex.1985); *Burns v. Ersek,* 591 F.Supp. 837, 839–42 (D.Minn.1984); *accord Andrews v. Orr,* 614 F.Supp. 689, 692 (S.D. Ohio 1985). The *Burns* court, for example, concluded that "the language and reasoning of *Crown Cork* imply that the Court would not extend the tolling doctrine to class allegations by putative class members in subsequent suits filed after denial of class certification." 591 F.Supp. at 840. The *Smith* court reached the same conclusion and went on to state:

> [E]ven if there were conflicting suggestions in [*Crown Cork*] that the tolling rule should apply to future *class* actions, this court would be disinclined to give them much weight. The rule advanced by Smith would allow the attorney for a class to revive the class claims upon denial of certification by simply refiling a new class action using a different putative class member as representative. The attorney would be able to bring a potentially endless succession of class actions, each tolling the [limitations period] for its successor. Such a rule would frustrate "[t]he principal purpose of the class action procedure—promotion of efficiency and economy of litigation...." [citing *Crown Cork*]

609 F.Supp. at 64 (emphasis in original).

Plaintiffs make several answers to these arguments. First, they point out that be- cause *American Pipe* and *Crown Cork* involved plaintiffs acting only on an individual basis, the Supreme Court was not presented with, and consequently did not consider, the question whether the tolling rule applies to suits brought by a new plaintiff in a representative capacity following denial or restriction of class certification in an earlier suit. Second, plaintiffs contend that defendants would not be prejudiced by such an application of the tolling rule, since defendants were put on notice of the precise claims and "generic identities" of the plaintiff class members in this case by the filing of the *Gordon* complaint in March 1982. Plaintiffs argue that the purposes of statutes of limitations as identified by the Supreme Court in *American Pipe* and *Crown Cork*—to give notice to defendants of adverse claims and to call plaintiffs' attention to their rights—would both be satisfied in this case even were tolling applied.

Third, plaintiffs cite the case of *United Airlines, Inc. v. McDonald,* 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977), for the proposition that the Supreme Court has been willing to extend the *American Pipe* tolling rule to a plaintiff acting in a representative capacity. *McDonald* involved a putative but unnamed member of a class which the district court had earlier refused to certify who waited until a final judgment was entered in the plenary action that had been allowed to go forward (and to which she was not a party) before moving to intervene for the purpose of appealing the earlier denial of class certification. Two facts of importance in *McDonald* were (1) that the Seventh Circuit Court of Appeals had declined to accept an interlocutory appeal of the adverse class certification determination prior to a final judgment in the plenary action and (2) that upon entry of the final judgment, the successful plaintiffs in the plenary suit decided not to appeal the district court's denial of class certification. The defendant opposed the plaintiff's right to intervene on the ground that the statute of limitations, which under *American Pipe* began to run upon denial of class certifica-

tion, had expired by the time the plaintiff moved to intervene. The Supreme Court agreed that the motion might have been time-barred had plaintiff sought to intervene for the purpose of joining the remaining plaintiffs in their plenary suit in order to litigate her individual claim on the merits. But the Court held:

> [T]he later motion to intervene in this case was for a wholly different purpose. That purpose was to obtain appellate review of the District Court's order denying class action status in the [initial] lawsuit, and the motion complied with, as it was required to, the time limitation for lodging an appeal.... Success in that review would result in the certification of a class, the named members of which had complied with the statute of limitations; the respondent is a member of that class against whom the statute had not run at the time the class action was commenced.
>
> ....
>
> The critical fact here is that once the entry of final judgment made the adverse class determination appealable, the respondent quickly sought to enter the litigation. In short, as soon as it became clear to the respondent that the interests of the unnamed class members would no longer be protected by the named class representatives, she promptly moved to intervene to protect those interests.
>
> United can hardly contend that its ability to litigate the issue was unfairly prejudiced simply because an appeal on behalf of putative class members was brought by one of their own, rather than by one of the original named plaintiffs.... United was put on notice by the filing of the [initial] complaint of the possibility of classwide liability, and there is no reason why Mrs. McDonald's pursuit of that claim should not be considered timely under the circumstances here presented.

432 U.S. at 392, 394–95, 97 S.Ct. at 2469–70 (footnotes omitted).[7]

### Conclusions As to Class Action Tolling

All the preceding arguments considered, the following observations can be made: 1. We agree with plaintiffs that the negative implication in *American Pipe* and *Crown Cork* that the Supreme Court would not apply the tolling rule to subsequent class actions is a weak one at best. In both those cases the Court had before it situations involving a subsequent individual, rather than class, action or motion, and the reasoning in those cases reflects that fact.

2. The theory at the heart of the *American Pipe* and *Crown Cork* decisions is that a tolling rule makes sense when it is needed to avoid frustrating the central purpose of class action procedure—efficiency and economy of litigation. This provides limited support for plaintiffs' position.

---

7. Plaintiffs also cite several other decisions they contend support their position. We find them inapposite. *Rossini v. Ogilvy & Mather, Inc.*, 597 F.Supp. 1120, 1129 (S.D.N.Y.1984), *rev'd*, 798 F.2d 590 (2d Cir.1986), did not, as plaintiffs suggest, involve a subsequent class action which had the benefit of the tolling rule. Rather, the named plaintiff Zukofsky was permitted to represent the class after she filed a motion for reconsideration of an earlier decision denying certification of a class represented by Zukofsky and Rossini. *See Rossini v. Ogilvy & Mather, Inc.*, 20 Empl.Prac.Dec. (CCH) ¶ 30,045 (S.D.N.Y. 1979). *Davis v. Bethlehem Steel Corp.*, 600 F.Supp. 1312, 1314–16 (D.Md.), *aff'd*, 769 F.2d 210 (4th Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 573, 88 L.Ed.2d 557 (1985), did involve a class action that followed an earlier denial of class certification. However, the court in that case refused to apply *American Pipe-Crown Cork* tolling even to the subsequent *individual* claims on the ground that the original complaint upon which the toll was premised was so general as to provide insufficient notice to the defendant of the type of claims which individual members of the rejected class might make against it. *Id.* at 1316–19. The holding as to the individual claims mooted the tolling issue as to the class claims. *See id.* at 1323. *Gay v. Waiters' and Dairy Lunchmen's Union*, 489 F.Supp. 282 (N.D. Cal.1980), *aff'd*, 694 F.2d 531 (9th Cir.1982) involved not a new class action but rather an amendment to the class complaint reasserting claims against one defendant which the court had tentatively determined earlier could not be asserted on a class basis. *Id.* at 285, 292–93. Finally, although *Bartlett v. Miller and Schroeder Municipals, Inc.*, 355 N.W.2d 435 (Ct.App. Minn.1984), confronted the very issue presented in the instant case, the court there decided the issue adversely to plaintiffs, citing *Burns v. Ersek, supra,* as support for its holding.

Failure to apply the tolling rule to subsequent class actions brought by putative members of earlier class actions might precipitate the simultaneous filing of protective class actions, a multiplicity of litigation that could be avoided if those contemplating potential class actions could wait to learn the outcome of the initial class determination. However, it must be recognized that there is a difference of orders of magnitude between the hundreds, thousands or tens of thousands of individual protective filings contemplated by the Supreme Court in cases such as *American Pipe* and *Crown Cork* and the few additional class action suits that would likely be invited by a refusal to apply the tolling rule in a case such as this.

3. The Supreme Court also found it important in *American Pipe* and *Crown Cork* to ensure that any tolling rule approved did not conflict with the purposes of statutes of limitations. Defendants in this case admit they are not prejudiced by lack of notice as to the existence of the purported class. Defendants' Reply Memorandum at 6 n. *. And it cannot fairly be said that plaintiffs "slept on their rights," since the *Gordon* complaint was filed within every applicable limitations period, the motion to intervene and expand the *Gordon* class was filed within three months of the decision limiting the *Gordon* class, and the present class action was filed within four days of the denial of that motion. Nevertheless, defendants make the important point that application of the tolling rule to subsequent class actions raises the possibility of perpetual class action filings by putative members of classes which had earlier been limited or denied. Even if perpetual tolling is only a theoretical possibility, the practical result of such an application of the tolling rule could well be the filing of successive class suits on the same causes of action for periods far exceeding the applicable limitations periods, a situation plainly at odds with the principle of repose that statutes of limitations are designed to achieve.

4. The case law on this question is sparse. Although we are not bound by the *Burns, Smith,* and *Andrews* decisions cited by defendants, it is of some significance that district courts in three circuits came to the conclusion that tolling should not apply to subsequent class actions.[8] As for plaintiffs' reliance on *McDonald*, we think the most that can be said of the decision is that it is another example of the Supreme Court's applying a tolling doctrine of sorts for the purpose of facilitating class action procedure in situations in which defendants will not be prejudiced. *McDonald* supplemented *American Pipe* with "a novel tolling rule applicable only to intervention for the purpose of appealing the denial of class status." *McDonald,* 432 U.S. at 398, 97 S.Ct. at 2471 (Powell, J., dissenting).[9]

5. Not applying the tolling rule in a case such as this is somewhat disquieting, in that it presents the possibility that similarly situated plaintiffs might receive dif-

**8.** A decision in this district has also refused to apply the *American Pipe-Crown Cork* tolling rule to a subsequently filed class action in the context of a substantive rule of limitation on damages contained in Section 36(b) of the Investment Company Act of 1940, 15 U.S.C. § 80a–35(b)(3) (1982), which provides that no damages are recoverable for any period prior to one year before the action was instituted. *See Krinsk v. Fund Asset Management, Inc.,* [1986 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,730 (S.D.N.Y. May 1, 1986) [Available on WESTLAW, DCTU database] (citing *Burns v. Ersek* with approval).

**9.** Moreover, some ambiguous language in the Court's opinion notwithstanding, we question plaintiffs' characterization of *McDonald* as a case in which tolling was applied to a plaintiff acting in a representative capacity. The putative class member in *McDonald* who sought to appeal the denial of class certification appears to have moved to intervene as an *individual* in the plenary suit that had been allowed to go forward after denial of class certification. *See Romasanta v. United Airlines, Inc.,* 537 F.2d 915, 917–19 (7th Cir.1976). The posture of the intervention is not changed by the fact that the intervenor's success on appeal would result in the certification of the original proposed class—as actually happened in that case, *see id.* at 919–20—or by the fact that the Court of Appeals for the Seventh Circuit instructed the district court to "permit petitioner to intervene on her behalf and on behalf of her class, [and] to treat the case as an action by her class." *Id.* at 920.

ferent treatment based on arbitrary differences in the posture in which they bring their cases. This is particularly so when, as here, major factors in denying the class certification requested in *Gordon* were (1) the possibility of a conflict of interest between the named plaintiff and some members of the proposed class and (2) the unmanageability of the case if the class were certified as proposed. For example, had the *Gordon* case been filed by plaintiffs' attorney as several separate class actions in March 1982, each might have been certified (as was *Gordon*'s limited class) and might be going forward today.[10] Specifically, not applying tolling to new class actions runs the risk of penalizing plaintiffs in this case for deciding to proceed initially in the form of a single class action[11] as well as for moving to expand the class rather than filing a new class action after the initial proposed class was limited.[12] On the other hand, it is not unusual that strategic choices made in litigation carry with them strategic losses.

■ The preceding observations leave us with the firm conclusion that whatever route we take with regard to the question of the applicability of the tolling rule to subsequent class claims would leave this case in considerable uncertainty. Applying tolling to such claims would permit this case to go forward with respect to the class claims asserted by all of the named plaintiffs at the substantial risk that the bulk of the case would be dismissed by the Court of Appeals if tolling is later held on appeal to be inapplicable, since as discussed in detail below, the applicable statutes of limitations would bar most of the claims in this case. For example, absent tolling, all of the antitrust and RICO claims asserted by the named plaintiffs would be time-barred as to all defendants. Such a waste of the court's, as well as the parties', resources should be avoided if at all possible. Consequently, we conclude that the proper course to take is to hold that the tolling rule of *American Pipe* and *Crown Cork* should not be applied to the class claims in this case and, pursuant to Fed.R.Civ.P. 54(b), to enter a final judgment as to claims and parties thereby eliminated.

The judgment as to each of these claims is final because it is " 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.' " *I.L. T.A., Inc. v. United Airlines, Inc.*, 739 F.2d 82, 84 (2d Cir.1984) (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956)). Moreover, there is no just reason for delaying the entry of a final judgment as to these claims since considerations of judicial economy and administration tip decidedly in favor of immediate review. *See Curtis-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 8, 100 S.Ct. 1460, 1465, 64 L.Ed.2d 1 (1980). First, the trial court would be obliged to preside over a retrial in the event the dismissed claims were reinstated by the Court of Appeals after a final judgment had been rendered on all claims in the case. Second, the dismissed claims are separable from those remaining to be adjudicated.[13] Third, the nature of the claims

10. Creating subclasses within a single class action might also be possible in some cases subject to limitations imposed by concerns over manageability and intra-class conflicts.

11. Had this action been brought as several separate suits in March 1982 when *Gordon* was filed (assuming subsequent certification), all the causes of action would have been timely brought. *See infra* section II–D.

12. Had this action been filed at the time the motion to intervene and expand the class was made in *Gordon* in October 1983, less than four years would have already run on the applicable statutes of limitations—well within the limitations periods governing the antitrust claims in this case. *See infra* section II–D.

13. Although the adjudicated and remaining claims "stem from essentially the same factual allegations," *Cullen v. Margiotta*, 618 F.2d 226, 228 (2d Cir.1980), a factor militating against Rule 54(b) certification, the distinct legal bases supporting, for example, an antitrust claim on the one hand and a common law fraud claim on the other, make the claims in and out of the case sufficient to warrant Rule 54(b) treatment. *See Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 437 & n. 9, 76 S.Ct. 895, 900 & n. 9, 100 L.Ed. 1297 (1956).

already adjudicated is such that the appellate court will not be called upon to decide the same issues twice, since appellate resolution of the question of law controlling the disposition of the certified claims would be binding on all defendants in this case who have not joined the motions to dismiss considered in this decision. In addition, any delay in the entry of judgment and appeal of the unusual legal issue presented would work a hardship on plaintiffs by requiring them to proceed on their claims in two trials in the event the dismissed claims are reinstated by the Court of Appeals. In sum, the circumstances of this case justify Rule 54(b) certification and are sufficient to overcome the usual policy of avoiding piecemeal appeals. *See generally Ansam Associates, Inc. v. Cola Petroleum, Ltd.,* 760 F.2d 442, 445–46 (2d Cir.1985) and cases cited therein.

### D. Application of the Governing Statutes of Limitations to Particular Claims

As noted above in section II–C, the *American Pipe-Crown Cork* tolling rule does apply to the individual claims of the named plaintiffs. With the benefit of the toll, little more than two years had run on the statutes of limitations applicable to these claims by the time this action was filed. Consequently, with the exception of certain claims by Finkelstein based on his July 1979 trading and certain claims asserted against Continental Grain and Goldschmidt, all the individual claims in this lawsuit are timely brought since the shortest applicable limitations period is three years, as discussed below. The ensuing discussion of the governing statutes of limitations therefore applies primarily to the timeliness of the class claims.

### Antitrust Claims

■ The limitations period for the federal and state antitrust claims alleged in counts I–IV of the amended complaint is four years from the time a plaintiff's cause of action accrues. *See* Clayton Act § 4B, 15 U.S.C. § 15b (providing limitation of actions under Sherman and Clayton Acts);

N.Y.Gen.Bus.Law § 340(5) (providing limitations period for actions under New York antitrust law). Because this class action was filed well over four years after the antitrust causes of action accrued, all of the antitrust class claims (counts I–IV)—as well as Finkelstein's individual antitrust claims based on July 1979 trading and the named plaintiffs' individual antitrust claims against Continental Grain and Goldschmidt—are time-barred.

### CEA Claims

At the time plaintiffs' causes of action accrued, the CEA did not contain a statute of limitations applicable to implied private rights of action brought under its provisions. For the reasons set forth at length in two recent decisions of this court, we decline to adopt defendants' suggestion that this statutory gap be filled by borrowing the federal two-year limitations period presently contained in the regulatory scheme. *See Grosser v. Commodity Exchange, Inc.,* 639 F.Supp. 1293, 1298–99 (S.D.N.Y.1986); *Fustok v. ContiCommodity Services, Inc.,* 618 F.Supp. 1076, 1078–80 (S.D.N.Y.1985). Federal courts in such a situation must therefore "look[ ] to the limitation periods of their forum states governing the most nearly analogous cause of action." *Bache Halsey Stuart, Inc. v. Namm,* 446 F.Supp. 692, 693 (S.D.N.Y. 1978).

In this case, as in *Grosser,* reference to the law of the forum requires recourse to New York's borrowing statute, N.Y.Civ. Prac.Law § 202 (McKinney 1972). The borrowing statute prescribes that a nonresident plaintiff's cause of action should be governed by the shorter of either the applicable New York statute of limitations or the applicable rule of limitation in the state where the cause of action accrued. According to the Court of Appeals for this circuit, a cause of action accrues for New York borrowing statute purposes at the "place of injury." *See Stafford v. International Harvester Co.,* 668 F.2d 142, 148–50 (2d Cir.1981). Under the "place of injury" rule, a cause of action for fraud is con-

sidered to accrue where the loss is sustained, and the loss "is deemed to be suffered where its economic impact is felt, normally the plaintiff's residence." *Sack v. Low,* 478 F.2d 360, 366 (2d Cir.1973). The parties appear to agree that the states of residence of the various named plaintiffs should provide the limitations periods against which to compare the New York limitations period which is most appropriately applied to the CEA claims.

In selecting in each state the statute of limitations governing the cause of action most analogous to a CEA claim, the guiding principle is that in the absence of case law directly on point or a state commodity fraud statute and an accompanying rule of limitation, the most appropriate state limitations period is that which the federal courts sitting in that state apply to federal securities fraud causes of action. The analysis of the rule of limitation governing the CEA claims of each named plaintiff is as follows:

■ *Korweks (Michigan):* The Sixth Circuit Court of Appeals has applied the six-year statute of limitations for common law fraud, Mich.Comp.Laws.Ann. § 600.5813 (West 1968) (Mich.Stat.Ann. § 27A.5813 (Callaghan 1986)), to federal securities fraud actions in preference to that state's two-year blue sky limitations period. *See IDS Progressive Fund, Inc. v. First of Michigan Corp.,* 533 F.2d 340 (6th Cir. 1976). That court continues to apply the

Michigan six-year period even though it recognizes that "[t]he majority of circuits have applied blue sky law limitation periods rather than limitation periods for fraud actions to 10b–5 claims." *Carothers v. Rice,* 633 F.2d 7, 13 (6th Cir.1980), *cert. denied,* 450 U.S. 998, 101 S.Ct. 1702, 68 L.Ed.2d 199 (1981). Accordingly, the six-year limitations period would be most likely to be applied to CEA claims by the Sixth Circuit Court of Appeals.

■ *Finkelstein (Pennsylvania):* The parties agree that Pennsylvania's three-year blue sky limitations period, (Pa.Stat. Ann. Tit. 70, § 1–504(a) (Purdon 1986)), should apply to the CEA claims asserted by Finkelstein in his individual and representative capacity. Because the law in the Third Circuit is not completely clear as to when Pennsylvania's six-year common law fraud limitations period should be applied in preference to the blue sky limitations period in dealing with federal securities law claims,[14] and in view of the fact that neither the court of appeals in that circuit nor any district court in Pennsylvania has ever considered which limitations period applies to claims brought under the federal *commodities* laws, the three-year blue sky period will be applied in this case. *Cf. Grosser,* 639 F.Supp. at 1301 n. 7 (discussing applicable New Jersey limitations period).

■ *Cohn (Massachusetts):* The Court of Appeals for the First Circuit applies the three-year period set by Massachusetts law

**14.** The same difficulty was confronted in *Grosser,* where although neither party referred to decisions by the Third Circuit Court of Appeals or the New Jersey district court, we noted that the question of which New Jersey limitations period governs a federal securities claim was the subject of at least two opinions. *See id.,* 639 F.Supp. at 1301 n. 7. The relevant Third Circuit opinion in this case is *Biggans v. Bache Halsey Stuart Shields, Inc.,* 638 F.2d 605 (3d Cir.1980), in which the six-year Pennsylvania statute of limitations governing common law fraud was applied over a strong dissent by Judge Weis to federal securities fraud claims in preference to the blue sky limitations period because the Court of Appeals found variations between the state and federal securities fraud statutes. For example, in contrast to the federal law, the state scheme was found to provide rescission as the

only remedy for fraud in a securities transaction, and a cause of action under state law could only be had by a civil plaintiff against his buyer or seller, not his broker. *See id.* at 609–10; *accord Sharp v. Coopers & Lybrand,* 649 F.2d 175, 191–92 (3d Cir.1981), *cert. denied,* 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982). Federal district courts in Pennsylvania have applied both limitations periods since the *Biggans* case. *Compare, e.g., Kirschner v. Cable/Tel Corp.,* 576 F.Supp. 234, 239 (E.D.Pa.1983) (applying blue sky period) *with Insurance Co. of North America v. United States,* 561 F.Supp. 106, 119 (E.D.Pa. 1983) (applying common law fraud period).

As in *Grosser* we decline to embark on an involved comparison of the Pennsylvania blue sky law with plaintiffs' CEA claims and instead apply the three-year limitations period suggested by the parties.

for miscellaneous tort suits on post–1973 causes of action, Mass.Ann.Laws ch. 260, § 2A (Law Coop.1980), to federal securities claims. *See Cook v. Avien, Inc.*, 573 F.2d 685, 694 & n. 20 (1st Cir.1978); *accord Downey v. Vernitron Corp.*, 559 F.Supp. 1081, 1087 (D.Mass.1982). Defendants suggest that Massachusetts' two-year blue sky limitations period provides the applicable rule but cite no authority for the proposition other than the trend toward the application of state blue sky limitations periods to federal securities claims.

■ *Williams (Colorado):* The limitations period applicable to federal securities fraud causes of action in Colorado is that state's three-year statute of limitations for common law fraud, Colo.Rev.Stat. §§ 13–80–108 to 109 (1974). *Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1041 (10th Cir.1980); *Morgan v. Dain Bosworth*, 545 F.Supp. 953, 955 (D.Colo.1982). This period is apparently preferred to Colorado's two-year blue sky statute of limitation, applying to causes of action accruing prior to July 1, 1981, which the defendants would have us adopt for the CEA claims in this case. As was the case with respect to the applicable Massachusetts limitations period, defendants cite no case law supporting their position.

Under the New York borrowing statute, as discussed above, each of the preceding state limitations periods must be compared with the governing New York statute of limitations and the shorter of the two applied. Since New York has no blue sky limitations period, federal courts customarily apply the New York statute of limitations for common law fraud, N.Y.Civ. Prac.Law § 213(8) (McKinney Supp.1986), which is six years. *See Armstrong v. McAlpin*, 699 F.2d 79, 86 (2d Cir.1983). Because this period is longer than or equal to each of the applicable foreign states' statutes of limitations, it does not provide the governing rule with respect to any of the named plaintiffs' claims.

As the governing Pennsylvania, Massachusetts, and Colorado limitations periods would be three years, the class claims asserted by Finkelstein, Cohn, and Williams—as well as Finkelstein's individual claims based on July 1979 trading and those plaintiffs' individual claims against Continental Grain and Goldschmidt—are time-barred because the present complaint was filed more than four years after the CEA causes of action had accrued. Since the applicable Michigan limitations period is six years, the class claims represented by the Korweks and their individual claims against Continental Grain and Goldschmidt are timely.

### Common Law Fraud Claims

■ Most of the statutes of limitations applicable to claims of common law fraud have already been identified in connection with the discussion above of the limitations period for the CEA claims: New York (six years); Michigan (six years); Colorado (three years). The applicable limitations period for fraud actions under Massachusetts law is the three-year rule of limitation governing various tort actions also discussed above. *See, e.g., Krohn v. United States*, 578 F.Supp. 1441, 1450 (D.Mass. 1983) (applying two-year predecessor statute to fraud claims), *modified on other grounds*, 742 F.2d 24 (1st Cir.1984); *see also Gilman Bros. v. Peat, Marwick, Mitchell & Co.*, 486 F.Supp. 785, 786 (S.D. N.Y.1980) (discussing amendment of limitations period).

The Pennsylvania limitations period governing a common law fraud cause of action arising between June 1978 and February 1983—a subject upon which the federal district courts sitting in Pennsylvania have for some years been divided—has recently been determined by the Third Circuit Court of Appeals to be that state's six-year "catchall" statute of limitations, 42 Pa. Cons.Stat.Ann. § 5527(6) (Purdon 1981). *See A.J. Cunningham Packing Corp. v. Congress Financial Corp.*, 792 F.2d 330, 332–37 (3d Cir.1986).

Consequently, in accordance with the borrowing statute, the common law fraud class claims and the individual claims against Continental Grain and Goldschmidt

brought by Cohn and Williams are barred by the three-year limitations periods of Massachusetts and Colorado respectively, while the common law fraud class claims asserted by the Korweks and Finkelstein (as well as their individual claims against Continental Grain and Goldschmidt and Finkelstein's individual claims based on July 1979 trading) were timely brought within the respective Michigan and Pennsylvania six-year limitations periods.

### RICO claims

Like the CEA at the time plaintiffs' causes of action arose, RICO does not contain its own statute of limitations for private civil actions. It is therefore again necessary for a federal court to borrow the most appropriate limitations period provided by state law. *Durante Bros. & Sons v. Flushing National Bank*, 755 F.2d 239, 248 (2d Cir.), *cert. denied*, — U.S. —, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985). Defendants contend that New York's three-year statute of limitations governing actions to recover upon a liability, penalty, or forfeiture created or imposed by statute, N.Y. Civ.Prac.Law § 214(2) (McKinney 1972), is the most appropriate limitations period under New York law. If defendants' argument were accepted, recourse to the limitations periods provided by the named plaintiffs' states of residence [15] would be unnecessary, because all the class claims (as well as plaintiffs' individual claims against Continental Grain and Goldschmidt and Finkelstein's individual claims based on July 1979 trading) were brought well over four years

after the RICO causes of action accrued and would thus be time-barred under New York's borrowing statute.

■ After giving careful consideration to the question of which New York limitations period should govern the RICO claims in this case, we have decided to adopt the reasoning and result of Judge Conner's recent decision in *Bankers Trust Company v. Feldesman*, 65 B.R. 470, 481–88 (S.D. N.Y.1986), in which the three-year period of N.Y.Civ.Prac.Law § 214(2) was applied to a RICO claim predicated on numerous fraudulent acts. We are persuaded, as was Judge Conner, that the federal courts in each state should apply a uniform state statute of limitations for all civil RICO claims and that the most appropriate New York limitations period is that provided by Section 214(2). To avoid repetition of the arguments in support of these conclusions so ably presented elsewhere, we refer the reader to Judge Conner's *Bankers Trust* opinion.

We recognize that this holding departs from our decision last year in *Fustok v. ContiCommodity Services, Inc.*, 618 F.Supp. 1076, 1080–81 (S.D.N.Y.1985), that the most appropriate limitations period under New York law for a RICO claim grounded in fraud was the six-year period provided by N.Y.Civ.Prac.Law § 213(8), governing common law fraud. The decision to abandon the particularistic approach to the selection of an appropriate limitations period for a RICO claim (*i.e.*, varying the limitations period with the offense underlying each RICO claim) in favor of a

---

**15.** The parties did not brief the issue of which foreign state limitations periods should apply to the RICO claims. The Third Circuit Court of Appeals has recently decided that Pennsylvania's six-year "catchall" statute of limitations should apply to all federal RICO actions. *See Malley-Duff & Assocs. v. Crown Life Ins. Co.*, 792 F.2d 341 (3d Cir.1986). Civil RICO claims in Colorado are governed by that state's three-year residuary statute of limitations. *Victoria Oil Co. v. Lancaster Corp.*, 587 F.Supp. 429 (D.Colo. 1984). The Court of Appeals for the Sixth Circuit has recently adopted a case-by-case approach to the selection of an analogous state statute of limitations for federal RICO claims, *see Silverberg v. Thomson McKinnon Securities,*

*Inc.*, 787 F.2d 1079, 1082–84 (6th Cir.1986), and would presumably select Michigan's six-year limitations period for common law fraud to govern the RICO claim in this case, *see id.* at 1083. We are not aware of any decision by the First Circuit Court of Appeals or the federal district court in Massachusetts which has come to a legal conclusion about what Massachusetts limitations period should govern private civil RICO claims. *Cf. UST Capital Corp. v. Charter Nat'l Life Ins. Co.*, No. 77–21–Z, slip op. (D.Mass. July 10, 1986) (available on LEXIS) ("The parties agree that the limitations period applicable to both the RICO and the fraud claim is three years.").

uniform approach is based on recent, persuasive readings of the Supreme Court's opinion in *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (mandating the application in each state of a uniform statute of limitations to Section 1983 actions), by decisions such as *Bankers Trust,* 484–86; *Malley-Duff & Associates v. Crown Life Insurance Co.,* 792 F.2d 341, 345–49 (3d Cir.1986); and *Electronic Relays (India) Pvt., Ltd. v. Pascente,* 610 F.Supp. 648, 649–51 (N.D.Ill.1985). However, it is also to be noted that our decision in *Fustok* was supported by strong practical considerations that are not applicable to the case at hand. We stated in Fustok:

> This case is about to go to trial and the bulk of discovery has been completed; therefore, proof of the RICO allegations will impose no substantial further pretrial burdens on the moving defendants. Keeping the RICO claim in the case also will not add significantly to the length of the trial since little additional proof will need to be adduced to establish the RICO claim that will not otherwise be necessary to make out the several other causes of action grounded in fraud. Dismissal of the RICO claim runs the risk of a costly retrial in the event that the Court of Appeals subsequently clarifies its position on the appropriate limitations period in agreement with plaintiff's understanding. Such a rerun would not only constitute a significant and unnecessary extra demand on judicial resources,

but also on the resources of the parties themselves.

*Id.,* 618 F.Supp. at 1081. In contrast to *Fustok,* this case is not on the eve of trial and the bulk of discovery has yet to be completed. In *Fustok* dismissal of the RICO claims would have left all other claims in the case, while in the instant action most of the other claims, including all the antitrust and most of the CEA causes of action, will be eliminated. For example, all of the class claims asserted against defendants by Cohn and Williams are timebarred. Finally, while dismissal of the RICO claims in *Fustok* ran the risk of a major retrial in the event the Court of Appeals disagreed with our holding, the certification of the dismissal of certain claims in this case for immediate appellate review pursuant to Rule 54(b) should eliminate such a risk altogether.

## II. CEA § 4b

■ Defendants move to dismiss all individual and class claims brought under CEA § 4b for failure to state a claim.[16] They contend that this provision of the CEA can be invoked only (1) for fraudulent activities in connection with specific trades made on a plaintiff's behalf and (2) by a customer suing his own broker. While there is some doubt as to the validity of defendants' second limitation, we agree that plaintiffs' allegations that defendants conspired to corner the silver market do not amount to the fraud in connection with specific transactions on plaintiffs' behalf

---

**16.** The relevant portions of Section 4b read as follows:

> *Contracts designed to defraud or mislead; bucketing orders; buying and selling orders for commodities*
>
> It shall be unlawful (1) for any member of a contract market ... in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce, made, or to be made, on or subject to the rules of any contract market, for or on behalf of any other person, or (2) for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, made, or to be made, on or subject to the rules of any contract market, for or on behalf of any other person ...

> (A) to cheat or defraud or attempt to cheat or defraud such other person;
>
> (B) willfully to make or cause to be made to such other person any false report or statement thereof, or willfully to enter or cause to be entered for such person any false record thereof;
>
> (C) willfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any such order or contract or the disposition or execution of any such order or contract, or in regard to any act of agency performed with respect to such order or contract for such person;

**7 U.S.C. § 6b (1982).**

which is necessary to state a claim for relief under Section 4b.

There is authority for the proposition that CEA § 4b claims are not limited to the broker-customer relation. In *Leist v. Simplot*, 638 F.2d 283 (2d Cir.1980), *aff'd sub nom. Merrill Lynch, Pierce, Fenner & Smith v. Curran*, 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 82 (1982), a case which involved multiple conspiracies to manipulate the market for Maine potato futures in the spring of 1976, Judge Friendly stated in *dicta:*

> § 4b, to put it mildly, is not an easy provision to construe. Commentators have said of it that "While the intent to outlaw fraud is clear from the (A)-(C) subparagraphs, the syntactical mess which precedes them makes it difficult to answer some basic questions about coverage." Bromberg & Lowenfels, *supra,* § 452, at 82.286. Appellees are wrong in saying that § 4b by its terms only prohibits "any person" from defrauding "any other person" in connection with the making of a futures contract for or on behalf of that other person. Thus, if A defrauds broker B, who was making a futures contract for C, A would have defrauded C in connection with a futures contract made for C, although C is not A's customer. The applicability of § 4b may well extend even further, since it could be argued that one trading for his own account makes a contract "for" himself, thus bringing fraud between two principals within the confused language of § 4b.... None of the cases recognizing an implied right of action under § 4b suggest limitation to the broker-customer relation.

638 F.2d at 322 (footnote omitted); *but see id.* at 331–32 (§ 4b is limited to protection of customers against fraud on the part of broker-dealers acting on their behalf) (Mansfield, J., dissenting).[17] The primary question before the Court of Appeals in

*Leist,* however, was whether there existed a private cause of action under various provisions of the CEA, and Judge Friendly

> deem[ed] it inadvisable to rule on the [specific] applicability of § 4b without the benefit of evidence of the exact relations among the various parties; indeed plaintiffs may find it unnecessary to rely on this section. It is enough for present purposes that the CEA counts stricken from the complaints clearly charged a gross violation of the prohibition of manipulation, § 9(b)....

*Id.* at 323.

The language in *Leist* did not cover the question of whether a claim under Section 4b must allege a connection to a specific futures transaction. Subsequent cases have answered this question in the affirmative. In *ACLI International Commodity Services, Inc. v. Banque Populaire Suisse,* 550 F.Supp. 144 (S.D.N.Y.1982), the district court interpreted Judge Friendly's example in *Leist* as recognizing "that plaintiffs under § 4b must be persons defrauded in connection with a futures transaction conducted on their behalf, not simply any person defrauded in connection with any futures contract." *Id.* at 145. In *Hagstrom v. Breutman,* 572 F.Supp. 692 (N.D.Ill. 1983), the court found that the complaint did "not allege deception or fraud in connection with any particular futures contract, but only in connection with defendants' trading generally," *id.* at 697, and determined that summary judgment would be granted unless "plaintiffs can establish fraud, misrepresentation or wilful deception by defendants with respect to specific contracts," *id.* And in *Merrill Lynch Futures Inc. v. Kelly,* 585 F.Supp. 1245 (S.D. N.Y.1984), the court commented after analyzing the words of the statute that Section 4b "is not an unrestricted prohibition of market fraud." *Id.* at 1251. Most recently, we held in *Michelson v. Merrill Lynch,*

---

17. Judge Mansfield stated in dissent:

> Nowhere does § 4b mention parties having no connection to the contract. Nor, despite the majority's effort to strain a broader coverage out of the section's language, is there any

> indication that Congress intended to create the massive liability that would result if broker-dealers were made liable to every trader active in the market at a given time.

*Leist v. Simplot,* 638 F.2d at 332.

*Pierce, Fenner & Smith, Inc.*, 619 F.Supp. 727 (S.D.N.Y.1985), a case involving similar allegations and many of the same defendants as this case, that charges that defendants made efforts to corner the silver market did not state a claim under Section 4b. *Id.* at 740.

We adhere to the conclusion stated in *Michelson.* This holding is bolstered by the legislative scheme of the CEA, which provides in Sections 4b and 9(b) respectively separate prohibitions for fraud and manipulation. A leading treatise on commodities regulation makes the following distinction:

> Market manipulation is, by its very nature, an offense against the market as a whole and, for that reason, might be characterized as "impersonal." A market manipulator cares little about the identity of other market participants and may have no direct relationship with any of them. His aim is to influence market prices in his favor, period. The perpetrator of fraud, on the other hand, usually targets a particular victim—a customer, a person with whom he trades, or another identified market participant. His actions in furtherance of the fraud are usually tailored to achieve that aim vis-a-vis a particular victim or set of victims. His misconduct, therefore, can be characterized as "personal."

2 P. Johnson, *Commodities Regulation* § 5.00 (1982).

Accordingly, those § 4b claims that are not time-barred are dismissed for failure to state a claim for which relief can be granted.

\*     \*     \*     \*     \*     \*

In sum, the motions to dismiss are granted to the extent that the antitrust claims (counts I–IV) and RICO claims (count IX) asserted on a class basis by the named plaintiffs, on an individual basis by Finkelstein for his July 1979 trading, and on an individual basis by the named plaintiffs against Continental Grain and Goldschmidt are dismissed; the CEA § 9(b) claims (count V) asserted on a class basis by Finkelstein, Cohn and Williams, on an individual basis by those plaintiffs against Continental Grain and Goldschmidt, and by Finkelstein individually for his July 1979 trading are dismissed; the common law fraud claims (count VII) asserted on behalf of the proposed class by Cohn and Williams and individually by those plaintiffs against Continental Grain and Goldschmidt are dismissed; and all the CEA § 4b claims are dismissed.

Submit judgment on notice.