**Ralph J. ZOLA, Paul A. Zola, and Irving Zola, Plaintiffs,**

v.

**Larry GORDON and Edward Wagner, Defendants.**

**No. 86 Civ. 4790 (KC).**

United States District Court, S.D. New York.

Dec. 6, 1988.

Ralph Zola, Zola & Zola, Englewood, N.J., for plaintiffs.

Neal Schwarzfeld, Schwarzfeld Ganfer and Shore, New York City, for Gordon.

Robert Frey, Deutsch and Frey, New York City, for Wagner.

## OPINION AND ORDER

CONBOY, District Judge:

This case has been the subject of complex and protracted procedural and substantive argument since its inception in 1986. This Court issued a lengthy opinion and order granting partial summary judgment upon and dismissal of some of the plaintiffs' claims on April 25, 1988 and issued a brief supplemental opinion thereto on May 4, 1988. 685 F.Supp. 354. Familiarity with those decisions is assumed.

A motion for reargument is now before the Court, made by the Zola plaintiffs who seeks to persuade the Court to reverse its April 25, 1988 decision that for purposes of the statute of limitations, they had constructive notice of the complained of fraud as of June 13, 1984. A motion for reargument made by defendant Wagner is also now before the Court, who seeks to persuade the Court to reverse its April 25, 1988 decision that the single viable claim made in the complaint against him is not time-barred. A motion to dismiss the first cause of action in plaintiffs' newly filed second amended complaint and for rule 11 sanctions made by the defendant Gordon is also now before the Court. Finally, a motion to consolidate a recently filed related case with this action, made by plaintiffs, is also before the Court.

### I. *Zolas' motion*

Plaintiffs' essential argument is that their receipt of the IRS report in issue was not sufficient notice, as a matter of law, to put them on constructive notice of the defendants' fraud. They argue this is a question for the jury. The argument, distilled from plaintiffs' affidavits and memorandum is that other courts

> have held, in effect, that where (as here) there is an explanation (other than fraud) for the event ..., the District Court may not grant summary judgment on the ba-

sis that plaintiff should have been aware of possible fraud.... In the instant case, whether there is constructive notice of fraud from the devaluation of a movie because of allegedly limited destribution [sic] to art theaters is a question for the jury.

The first case plaintiffs cite is *Garter–Bare Co. v. Munsingwear, Inc.*, 723 F.2d 707 (9th Cir.), *cert. denied*, 469 U.S. 980, 105 S.Ct. 381, 83 L.Ed.2d 316 (1984). There, the parties had agreed to a three-phase program for the commercial application of a process for a garterless device for supporting women's hosiery developed by the general partner of the plaintiff company, Knut Bjourn–Larsen. The original contract was extended twice. The defendant then cancelled the contract. Later, plaintiff Larsen viewed an advertisement by the defendant and suspected they were using his patented product.

The court reversed a finding of summary judgment that Larsen's discussion with an attorney concerning his rights constituted constructive notice of a fraud claim. *Id.* at 713. The court emphasized that the only topics Larsen and the attorney then considered were the plaintiffs' contract and patent rights. *Id.*

■ The dissenting opinion, which this Court finds persuasive, asserted that "[i]t is knowledge of *facts*, not precise legal theories, that triggers inquiry and the running of the statute [of limitations]." *Id.* at 718 (Ely, J., dissenting in part) (emphasis in original). Plaintiffs attempt to minimize the IRS report by stating that it based its conclusion as to the film's worth on expert opinion that was demonstrably erroneous as to the potential distribution of the film (that the film would only play in "art" movie houses). This ignores the critical fact that the plaintiffs had demanded from Gordon assurances in the form of expert certification on the cost of the film. They claim they would not have entered the partnership without such assurances, which they in fact received.

For similar reasons, the other cases cited by plaintiffs are distinguishable and unavailing. In both *Barrett v. United States*, 689 F.2d 324 (2d Cir.1982) *cert. denied*, 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983) and *Richards v. Mileski*, 662 F.2d 65 (D.C.Cir.1981), the plaintiffs had legitimate reasons to believe that other reasonable explanations existed for the events on which they sued, and no reasons to believe otherwise. *See Barrett*, 689 F.2d at 329 (reasonable for decedent's estate to assume malpractice caused death rather than government's negligent creation, supervision, and administration of program of involuntary chemical experimentation on humans); *Richards*, 662 F.2d at 68 (reasonable for plaintiff to assume that false charge of homosexuality resulted from misleading of honest government agents by an informer they would have reasons to believe, rather than from agents' knowing inclusion of false information from known unreliable informer); *see also Ware v. United States*, 626 F.2d 1278, 1284 (5th Cir.1980) (statute of limitations tolled until plaintiff learned his healthy cattle had been slaughtered because of government misdiagnosis; he had right to rely on government test results, and "had no reason to suspect that the government was mistaken in its diagnosis"). In contrast to these cases, plaintiffs here possessed a critical fact, the Gordon letter of September 17, 1975, which created a duty of inquire.

Accordingly, upon reargument, the Court adheres to its ruling of April 25, 1988 as supplemented on May 4, 1988 and the relief sought by plaintiffs in their motion for reversal or modification of those rulings is denied.

## II. *Wagner's motion*

Defendant Wagner makes what counsel denominates as three arguments; in substance, they are two. First, Wagner claims that the four-year statute of limitations began to run no later than 1976 because the complaint does not attribute any conduct to Wagner after that year. He insists that since Wagner did not have a fiduciary relationship with the plaintiffs, as Gordon did, the principles of equitable tolling do not apply.

■ This argument is unavailing. The principle of equitable tolling "is read into every federal statute of limitation." *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946) (Frankfurter, J.). The presence or absence of a fiduciary relationship has no bearing on the applicability of the principle. Rather, it is a factor in determining the length of the period of tolling.

■ The principle of equitable tolling applies to RICO claims. The statute of limitations begins to run "when the plaintiff 'knows or has reason to know' of the injury that is the basis of the action." *Cullen v. Margiotta*, 811 F.2d 698, 703–04, 724–25 (2d Cir.) (quoting *Pauk v. Board of Trustees*, 654 F.2d 856, 859 (2d Cir.1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982)), *cert. denied*, — U.S. ——, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987). As Wagner argued in his memorandum in support of his original motion to dismiss, the "plaintiffs in no way ever dealt with defendant Wagner." How, then, could they be expected to know Wagner had injured them before they knew Gordon had injured them?

In his second argument, Wagner cites cases for the proposition that the tolling period ceases at the time Wagner was indicted, or, at the latest, when the was convicted. If notice is found on the latter date, the plaintiffs' RICO claim is time-barred, as Wagner was convicted on May 25, 1982. The cases Wagner cites do not definitively require this result. Rather, those cases support the proposition that sufficient public notoriety may end the tolling period.

For example, in *Berry Petroleum Co. v. Adams & Peck*, 518 F.2d 402 (2d Cir.1975), a securities fraud class action, the American Stock Exchange suspended trading in shares of the malefactor corporation. Ten days later, the Securities Exchange Commission suspended trading in the corporation's shares on the over-the-counter market. A different class action lawsuit was filed less than thirty days after the SEC acted. The Second Circuit stated that "[s]ince th[e] plaintiffs [who filed the other lawsuit] discovered the fraud, there is not doubt that the fraud was discoverable" by a particular date, thereby barring prosecution of Berry Petroleum Co. *Id.* at 410.

Similarly, in *Korwek v. Hunt*, 646 F.Supp. 953 (S.D.N.Y.1986) (Lasker, J.), *aff'd*, 827 F.2d 874 (2d Cir.), *reh'g denied*, 827 F.2d 874 (2d Cir.1987), the court stated that "[t]he filing of lawsuits by private parties has been held in this circuit to put plaintiffs on notice of their potential claims." *Id.* at 958 (citing *Berry Petroleum Co.*). The court also pointed to "public investigations including hearings before congressional committees," reports issued by the Commodities Futures Trading Commission, and "substantial media coverage of the events which form the basis for plaintiffs' claim." *Id.* at 958–59.

The analogy Wagner attempts to draw between other private lawsuits and a criminal prosecution is not wholly convincing. The government has resources not available to private parties, and is in the business of ferreting out criminal activity. That something is known to the government does not argue for the proposition that it is known to other private parties.

Wagner does draw direct support from a footnote in *Hunt*, where Judge Lasker explained the holding of another case: "[T]he statute of limitations in *Clark [v. United States*, 481 F.Supp. 1086 (S.D.N.Y.1979), *appeal dismissed*, 624 F.2d 3 (2d Cir. 1980) ], was held to be tolled until the date a criminal indictment of several of the defendants was filed." 646 F.Supp. at 959 n. 4. Upon close inspection, though, it is apparent that in *Clark* the plaintiffs contended that they knew of their claims only when the indictment was filed, and not sooner. The court accepted this statement of fact as true for purposes of the defendants' motion to dismiss. *Id.* at 1095–96. The court noted that one of the defendants, John Mitchell, did not deny that the plaintiffs did not know of the surveillance conducted against them by the government until March 1977, when the first indictment was filed. *Id.* at 1095 n. 8. Thus, the court did not hold as a matter of law that

the filing of an indictment automatically ends a tolling period.

The last case Wagner relies on is *La Porte Construction Co. v. Bayshore National Bank*, 805 F.2d 1254 (5th Cir.1986). There, the court stated that the conviction of a bank president and vice-president for embezzling funds from different accounts at the bank, although the conviction was not based on crimes committed against the plaintiffs' accounts, "should have put [plaintiffs]' [sic] on notice that something was wrong." *Id.* at 1256. However, the court actually held only that the statute of limitations did not start until, "at the latest," some short, but indefinite, time after the bank sued the plaintiff company, alleging that the plaintiff benefitted from the plaintiff company vice-president's embezzlement scheme. *Id.* at 1255, 1256. It is arguable, therefore that the convictions alone perhaps may not suffice to establish constructive notice against the plaintiffs herein.

■ The cases Wagner cites, however, support the argument that "public knowledge" is a sufficient basis on which to impute knowledge to the plaintiffs. At the oral argument of this motion, the Court invited Wagner's counsel to submit supplementary evidence of the media coverage of Gordon's and Zola's indictment and conviction.

Counsel's letters and attachments sent to the Court and dated June 16, July 28 and August 3, 1988 establish that the *New York Times*, the *New York Daily News* and the *Gannett Westchester Newspapers* all carried on July 9, 1981 prominent and detailed accounts of the federal indictment in Manhattan of Gordon and Wagner, explicitly named, in connection with tax fraud arising out of their operation of tax shelters involving motion picture properties. The *Daily News* account actually mentioned *The Romantic Englishwoman*, the specific film in which these plaintiffs invested. On May 27, 1982 *New York Newsday*, the *New York Post*, and the *New York Daily News*, and on May 28, 1982 the *Wall Street Journal* all carried prominent and detailed accounts of the conviction of Gordon and Wagner, and two others who had played prominent roles in the tax shelter operation.

It is not disputed that within a ten month period from July 9, 1981 to May 27, 1982 the defendants' indictment and conviction were in general circulation in the press, in six area newspapers, two of which are national newspapers. Furthermore, plaintiffs Ralph and Paul Zola have admitted in depositions that they regularly read *The New York Times* and have occasionally read *The Wall Street Journal*. Publicity on a less significant scale than this has been held to be an adequate predicate for imputing constructive knowledge to fraud claimants and starting the running of a statute of limitation. *Gluck v. Amicor Inc.*, 487 F.Supp. 608 (S.D.N.Y.1980).

Accordingly, the Court concludes that plaintiffs had constructive knowledge of the asserted fraud more than four years prior to June 18, 1986, the date on which the suit herein was filed. As the only claim against defendant Wagner, the sixth cause of action based upon RICO, therefore is time-barred, Defendant Wagner is granted summary judgment on this claim.

### III. *Gordon's motion*

■ Defendant Gordon seeks dismissal of the first cause of action in the second amended complaint, which asserts that defendants converted and appropriated to their own use partnership assets. The Court had in its April 25, 1988 opinion and order dismissed the claim because the status of the partnership had not been pleaded, which the Court held was a necessary predicate for properly pleading a claim of misappropriation of partnership assets. The amended claim asserts that "the partnership business has been concluded," Second Amended Complaint, p. 2, para. 10. This is sufficient, as a matter of pleading, to sustain the cause of action as one of misappropriation, and defeat the motion to dismiss for failure to state a claim upon which relief can be granted.

As with much else in the submissions of counsel in this case, the papers on this motion are not so disciplined, focused, thor-

ough or sufficiently attentive to theory and authority. In fact, counsel treat this motion as if it were for summary judgment. They then proceed to submit hearsay, personal invective and self-serving affidavits that leave more questions unanswered than answered. On this dubious and inadequate record, it is clear that summary judgment on the claim is not warranted. Whether Arlington Properties has ceased to conduct partnership business is a material issue of fact very much in dispute. Accordingly, Gordon's motion herein, is denied. His motion for sanctions made in connection with this motion, is also denied. Counsel for both sides may wish to inform themselves of the Court's sanctions ruling in *Burger v. Health Insurance Plan,* 684 F.Supp. 46 (S.D.N.Y.1988), before proceeding further in this action.

### IV. *Consolidation motion*

There appearing to be no opposition to plaintiffs' motion to consolidate *Zola, et al. v. Glantz,* 88 Civ. 4036 (KC) with this action, and as consolidation will serve the interests of justice, the motion is granted.

SO ORDERED.