(July 11, 1991)

■ TMG-II et al., Respondents-Appellants, v PRICE WATERHOUSE & Co., Appellant-Respondent, et al., Defendants.—Order of the Supreme Court, New York County (Burton S. Sherman, J.), entered on April 13, 1990, which, *inter alia,* granted defendant's motion to dismiss the complaint as untimely to the extent of dismissing all causes of action except the cause of action sounding in fraud, unanimously modified, on the law, to the extent of granting defendant's motion for summary judgment dismissing the complaint in its entirety, and the complaint is dismissed, without costs. The clerk is directed to enter judgment in favor of defendant Price Waterhouse & Co., dismissing and severing the complaint as against it.

Plaintiffs TMG Associates and TMG-II were formed in 1979 and 1980, respectively, as limited partnerships designed primarily for tax shelter investments. Plaintiffs also include numerous limited partners who lost virtually their entire investments in TMG and TMG-II.

The partnerships purported to return losses on a 4 to 1 ratio so that a $10,000 capital contribution returned $40,000 in ordinary losses. Unfortunately for the limited partners, the

losses were derived from prearranged fictitious trades, and the business consisted of little more than marketing fraudulent tax losses. Edward Markowitz, a general partner of both TMG and TMG-II, perpetrated the fraudulent transactions and pleaded guilty to a 4 count Federal information charging tax fraud.

From October 1979 until March 27, 1981, defendant Price Waterhouse performed accounting services for TMG, including preparation of TMG's 1979 tax return for the three months of its existence in 1979. It is alleged that Price Waterhouse authorized the inclusion of the 1979 financial statements in the 1980 TMG-II offering memorandum and assisted in preparation of projected tax consequences. There is no claim that Price Waterhouse performed services for TMG-II.

Price Waterhouse also allegedly participated in the fraudulent activities of Markowitz and failed to disclose the existence of transactions that it knew or should have known were sham and fraudulent. The record shows that on March 27, 1981, Price Waterhouse withdrew as auditors for TMG after TMG was unable to document to Price Waterhouse's satisfaction that the transactions were bona fide, and actually occurred. Price Waterhouse prepared a draft tax return for 1980, but withdrew before it was filed.

The dispositive issue on this appeal is the timeliness of the action under the two-year discovery rule for fraud (CPLR 203 [f]; 213 [8]). Because we hold the action untimely, we do not reach the issue of whether the fraud is sufficiently pleaded. The Motion Court granted Price Waterhouse's motion for summary judgment dismissing the complaint as untimely, except for the cause of action sounding in fraud. The Motion Court held that factual issues were presented as to when plaintiffs learned of the fraud. We disagree with respect to the timeliness of the fraud claim.

The two-year limitations period for fraud actions is measured from the time of discovery of facts constituting the fraud or from the time such facts could have been discovered with reasonable diligence. (CPLR 203 [f]; 213 [8].) On this record, we hold that the underlying facts of the fraud claim against Price Waterhouse, to the extent that they were not already known, could have been discovered with the exercise of due diligence more than two years before the action was commenced. Beginning in November 1983, when the IRS investigation became known to general partner Donald Weil, a series of facts became public that, in our view, were sufficient to have put the plaintiffs on notice and created a duty of

inquiry. *(See, Waters of Saratoga Springs v State of New York,* 116 AD2d 875; *Sielcken-Schwarz v American Factors,* 265 NY 239.)* The action was commenced on April 24, 1987. By April 24, 1985, the measuring date for the two-year limitations period, plaintiffs must be charged with knowledge of sufficient facts to create such a duty.

On May 10, 1984, the Wall Street Journal ran a front page story containing details of Markowitz's fraudulent activities. The details were obtained from an *ex parte* affidavit filed *mistakenly* by an Assistant U.S. Attorney in the public record, rather than under seal, leading to extensive news coverage of Markowitz's activities. That affidavit was filed by the government to seek a stay of a private lawsuit brought by Donald Weil, a general partner of TMG-II, against Markowitz and others. *(See, Weil v Markowitz,* 829 F2d 166 [DC Cir 1987].)

The allegations by Weil and other limited partners in that lawsuit reveal the extent of their knowledge and suspicions of Markowitz's fraudulent trading practices well before the two-year limitations period commenced. They knew the IRS had questioned the legitimacy of the losses as early as November 1983. This alone creates a duty of inquiry. *(See, Zola v Gordon,* 701 F Supp 66 [SD NY 1988].)

By May 10, 1984, when the Wall Street Journal story appeared, and certainly by early April 1985, when settlement proposals with Markowitz were being circulated, the plaintiffs are charged with knowledge that Markowitz had engaged in fraudulent and sham transactions.

Appellants argue that the two-year period must be measured from April 25, 1985, the date Markowitz entered his guilty plea to tax fraud. We disagree. The duty of inquiry created by plaintiffs' conceded knowledge of Markowitz's fraudulent trading activities commenced the running of the two-year limitations period well before Markowitz's guilty plea. *(See, Rutland House Assocs. v Danoff,* 37 AD2d 828.)* It makes no difference that plaintiffs did not realize that fraudulent trades by Markowitz could imply improper tax treatment of the fraudulent trades and a claim against the auditor. It is knowledge of facts not legal theories that commences the running of the two-year limitations period. *(Zola v Gordon,* 701 F Supp, *supra,* at 68.)

Accordingly, the order is modified to the extent of granting defendant's motion to dismiss the entire claim and granting summary judgment. Concur—Murphy, P. J., Carro, Kupferman, Asch and Kassal, JJ.