Robert D. PHILLIPS, individually and on behalf of other shareholders of Computer Depot, Inc., similarly situated, Plaintiff,

v.

KIDDER, PEABODY & CO., Defendant.

No. 87 Civ. 4936 (SWK).

United States District Court,
S.D. New York.

Dec. 13, 1991.

Schoengold & Sporn, P.C. by Samuel P. Sporn, New York City, for plaintiff.

Howard, Darby & Levin by Linda C. Goldstein and Philip K. Howard, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

In this action, plaintiff Robert D. Phillips ("Phillips" or "Mr. Phillips"), on behalf of a putative class of shareholders,[1] alleges that Kidder, Peabody & Co. ("Kidder") violated the federal securities laws and committed common law fraud in connection with a public offering of stock in Computer Depot, Inc. ("CDI"). Kidder has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the grounds that Phillips fails to allege an actionable misrepresentation or omission of fact, and that the federal securities claims are barred by the applicable statutes of limitations.

---

1. Phillips' complaint alleges that this action was instituted on behalf of all purchasers (other than defendant and its affiliates) who purchased stock in the public aftermarket from July 12, 1984 to December 18, 1985. The issue of class certification, however, has not yet been resolved. Phillips has moved for class certification before Magistrate Judge Francis, but that motion has been held in abeyance by the Magistrate Judge pending the outcome of Kidder's summary judgment motion. Thus, this opinion only addresses defendant's motion for summary judgment.

## BACKGROUND

CDI was a retailer of personal computers, software and related supplies, focusing on IBM and Apple products. CDI began operations in March 1981 with one leased computer center located in a Dayton's department store in Minneapolis, Minnesota. CDI's marketing strategy was to lease floor space in major department stores where it was able to take advantage of the store's customer traffic, advertising and consumer credit arrangements, while the department stores benefitted from CDI's expertise, its relationships with suppliers and its ability to secure volume discounts. By 1984, CDI was operating forty-one computer centers in fifteen states and the District of Columbia. In an effort to further expand its business, CDI made a public stock offering in 1984. Kidder and Dain, Bosworth, Inc. ("Dain, Bosworth") were the co-lead underwriters for the public offering. On July 12, 1984, in connection with the public offering, Kidder issued a Prospectus which, according to the complaint, Mr. Phillips relied on in purchasing 300 shares of CDI stock on July 12, 1984, the date of the initial public offering, and an additional one hundred shares of CDI stock on June 10, 1985.

The complaint focuses on this Prospectus. According to Mr. Phillips, the Prospectus presented a "falsely optimistic" picture of CDI's prospects. Specifically, Phillips claims that the Prospectus falsely stated that:

(1) "a new [CDI] computer center generally can achieve profitability ... within a relatively short period after it opens," Complaint at ¶ 27(i); Prospectus at 12;

(2) "the Company believes that it is able to remain price competitive due to its large volume of purchases which permits it to take advantage of high levels of price discounts," Complaint at ¶ 27(ii); Prospectus at 15; and

(3) "subject to obtaining financing and to other conditions relating to opening new stores, the Company presently plans to open approximately 90 new computer centers in calendar 1985," Complaint at ¶ 27(iii); Prospectus at 12.

Phillips further contends that the Prospectus omitted to state the following material facts:

(1) "the rapidly changing material adverse circumstances of the personal computer market, *inter alia*, that there was a significant price-cutting and a slackening in the growth of demand for personal computers which had occurred during the latter part of 1983 and was worsening in the first half of 1984; which caused a shake-out in the personal computer market," Complaint at ¶ 28(i);

(2) "CDI had sustained substantial losses in the 13 weeks immediately preceding the effective date of the offering," Complaint at ¶ 28(ii);

(3) "the negative effects of personal computer price decreases on CDI's business operations and profitability, which would substantially decrease the gross profit margin and make the representations of profitability of new stores false," Complaint at ¶ 28(iii);

(4) "the opening of new stores would drain the Company's assets and likely require it to seek the protection of the bankruptcy laws," Complaint at ¶ 28(iv);

(5) "competition in the retail personal computer market was so intense by mid–1984 that the likelihood of opening 49 more stores in remaining calendar 1984 and 90 stores in 1985 was remote at the time of the effective date of the Prospectus," Complaint at ¶ 28(v); and

(6) "numerous discount stores were driving down the prices of personal computers which would further negatively impact on CDI's business operations and profitability." Complaint at ¶ 28(vi).

CDI's performance fell well short of the representations made in the Prospectus. According to the complaint, during the fiscal year ended February 2, 1985, CDI opened only 47 new computer centers, and during the entire fiscal year ended February 2, 1986, CDI opened only 11 new computer centers. In addition, by February 2, 1986, CDI had closed approximately 20 computer centers. Complaint at ¶ 20. Further, CDI reported reduced prices and

gross profits in each SEC Form 10–Q for the quarters ending May 4, 1985, August 3, 1985, and November 2, 1985. Complaint at ¶¶ 21–23. CDI also disclosed for the first time in its Form 10–Q for the quarter ended May 4, 1985, that "in the current fiscal year, there has been a softening in the market for personal computers." Complaint at ¶ 21. By June 10, 1985, the price of CDI stock had fallen from the public offering price of $9.00 per share to $4⅞. The price per share continued to fall until it reached $1.50 per share on December 17, 1985. On December 18, 1985, CDI filed a Form 8–K with the Securities & Exchange Commission which stated that CDI had filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. Following this announcement, the price of the stock dropped to $0.75 per share.

Mr. Phillips commenced this action on July 10, 1987, and asserted four claims against Kidder. Count One alleges that Kidder, as a co-lead underwriter and an after-market "market-maker" in the stock of CDI, violated § 11 of the Securities Act of 1933 (the "1933 Act"), 15 U.S.C. § 77k, in that the July 12, 1984 Prospectus contained false and misleading material misrepresentations and omitted to state material facts. Count Two alleges that Kidder violated § 12(2) of the 1933 Act, 15 U.S.C. § 77l(2), in connection with the issuance of the Prospectus. Count Three alleges that Kidder violated § 10(b) of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5, in that Kidder, by its fraudulent conduct in artificially inflating and maintaining the price of CDI stock by means of materially false and misleading statements and omissions, engaged in acts, practices or courses of business which operated as a fraud upon Mr. Phillips and the other members of the class; made various untrue statements of material facts and omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and employed manipulative and deceptive devices and contrivances in connection with the sale of CDI securities. Count Four alleges common law fraud in connection with the CDI offering.

Kidder moved to transfer the case to the District of Minnesota, but its motion was denied by Order of the Court dated March 25, 1988. It also moved to dismiss on the grounds of res judicata and collateral estoppel, but that motion was also denied by Order of this Court dated July 24, 1990. 750 F.Supp. 603. Kidder then moved for summary judgment. It asserted that each of the federal securities claims was barred by the applicable statute of limitations and argued that none of the alleged misrepresentations or omissions were actionable because the Prospectus fully and adequately disclosed the special risks of investing in the personal computer retail market in 1984, including the very risks of falling prices and rising competition that Mr. Phillips claims were omitted. Finally, Kidder argued that Phillips' pendent state claim should be dismissed if summary judgment was granted in its favor on the federal claims. Discovery has not been completed in this matter, but has been stayed by Magistrate Judge Francis at Kidder's request during the pendency of this motion. Report and Recommendation (the "Report"), dated May 30, 1991, at 4.

Kidder's motion for summary judgment was initially heard by Magistrate Judge Francis who issued a Report and Recommendation dated May 30, 1991. The Report recommended that Kidder's motion for summary judgment be granted in part and denied in part. Specifically, the Report concluded that (1) Mr. Phillips' § 11 and § 12(2) claims under the 1933 Act were barred by the applicable statute of limitations, and thus summary judgment was appropriate; (2) Mr. Phillips' § 10(b) claim under the 1934 Act was not barred by the statute of limitations, and thus summary judgment was inappropriate; (3) Mr. Phillips' § 10(b) claim should not be dismissed, as a matter of law, for failure to allege an actionable misrepresentation or omission;[2]

---

2. The Report did not discuss whether Phillips' § 11 and § 12(2) claims alleged an actionable

and (4) Mr. Phillips' pendent state law claim would not be dismissed.

Pursuant to Federal Rule of Civil Procedure 72 and 28 U.S.C. § 636(b)(1)(B), both parties have filed partial objections to the Report. The Court has received and reviewed both the Report and the partial objections submitted by the parties, and has made the *de novo* determination required by both Rule 72 and 28 U.S.C. § 636(b)(1)(B) of those portions of the Magistrate Judge's disposition to which specific objections have been made. For the reasons set forth below, the Report is adopted in part and rejected in part, and discovery shall go forward.

## DISCUSSION

### I. Standard for Summary Judgment

■ Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). In testing whether the movant has met this burden, the Court must resolve all ambiguities against the movant. *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1187 (2d Cir.1987) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

■ The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on which that party would have the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323,

106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).[3] The non-moving party then has the burden of coming forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact. To avoid summary judgment, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (interpreting the "genuineness" requirement).

### II. Statute of Limitations

#### A. *The 1933 Act Claims*

As stated in the Report, Phillips' allegations under § 11 and § 12(2) are governed by the limitation period set forth in § 13 of the 1933 Act, which bars any claim

> unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence ... In no event shall any such action be brought ... more than three years after the security was bona fide offered to the public.

15 U.S.C. § 77m. Kidder contends that Phillips discovered, or, using reasonable diligence could have discovered the facts underlying the alleged fraud more than one year prior to his commencement of this action. The Report agreed with Kidder's contentions and dismissed Phillips' § 11 and § 12(2) claims. For the reasons set

---

misrepresentation or omission because those claims were dismissed under statute of limitations analysis.

**3.** The moving party may rely on the evidence in the record to point out the absence of genuine issues of material fact. *Celotex, supra*, 477 U.S. at 323, 106 S.Ct. at 2552. The moving party does not have the burden of providing evidence

to negate the non-moving party's claims. *Id.* As the Supreme Court recently noted, "whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.*

forth below the Court disagrees with the Report's recommendation to dismiss these claims.

■ As a preliminary matter the Court must establish the filing date of Mr. Phillips' action. The Magistrate Judge determined that although Phillips actually filed suit on July 10, 1987, the statute of limitations was tolled from June 25, 1986 to April 27, 1987, due to the pendency of another putative class action in the federal district court for the District of Minnesota concerning similar claims.[4] Thus, according to the Report, this action is "deemed" to have been filed for limitations purposes on September 7, 1986. Report, at 6–7; *see Crown Cork & Seal Co. v. Parker*, 462 U.S. 345, 353–54, 103 S.Ct. 2392, 2397–98, 76 L.Ed.2d 628 (1983) (the filing of a class action tolled the statute of limitations for other members of the putative class, and once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied).

The Court agrees that this action should be deemed to have been brought on September 7, 1986. Accordingly, if Mr. Phillips knew, or by the exercise of reasonable diligence should have known, of the alleged fraud prior to September 7, 1985, his claims under the 1933 Act are time-barred.

■ The Second Circuit has set forth the standard for reasonable diligence as follows:

... where the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him.

*In re Chaus Securities Litigation*, [Current Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 95,646 at 97,999, 1990 WL 188921 (S.D.N.Y. Nov. 20, 1990) (quoting *Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir.1983)). As the Report correctly notes, where uncontroverted evidence irrefutably demonstrates that the plaintiff was not diligent, and cannot as a matter of law refute defendant's plea of limitations, summary judgment may be granted. *See Kramas v. Security Gas & Oil, Inc.*, 672 F.2d 766 (9th Cir.1982); *Intre Sport Ltd. v. Kidder, Peabody & Co.*, 625 F.Supp. 1303, 1310–1311 (S.D.N.Y.1985), *aff'd*, 795 F.2d 1004 (2d Cir. 1986), *vacated on other grounds*, 482 U.S. 922, 107 S.Ct. 3203, 96 L.Ed.2d 690 (1987). It must be noted, however, that the question of whether a plaintiff exercised reasonable diligence in investigating an alleged fraud is generally a jury determination. *See Anisfeld v. Cantor Fitzgerald & Co.*, 631 F.Supp. 1461, 1466 (S.D.N.Y.1986); *Intre Sport Ltd.*, 625 F.Supp. at 1310. In *In re Chaus Securities Litigation*, Fed. Sec.L.Rep. ¶ 95,646 at 97,999, this Court noted that:

When there is an issue as to the 'reasonable diligence' of a plaintiff, resolution of this issue should be left for the jury ... Defendants face a heavy burden in proving inquiry notice, and therefore, this Court shall not impose a duty to inquire based on circumstances that create "genuine factual issues or tenuous inferences." *Huang v. Sentinel Government Securities*, 709 F.Supp. 1290, 1299 (S.D.N.Y.1989).

Further, where the facts of a case lead to conflicting inferences and conclusions, summary judgment is precluded. *Id.* at 97,999 (citing *Robertson v. Seidman & Seidman*, 609 F.2d 583, 591 (2d Cir.1979)).

■ Despite this stringent standard for the granting of summary judgment when there is an issue as to the plaintiff's reasonable diligence, the Report concluded, as a matter of law, that a number of events should have alerted Mr. Phillips to the possibility of the alleged fraud prior to September 7, 1985. Thus, the Magistrate Judge determined that Mr. Phillips' 1933

---

**4.** On June 25, 1986, Ronald Kassover, another CDI shareholder, filed an action in the federal district court for the District of Minnesota. His motion for class certification, however, was denied on April 27, 1987 as was a motion by Mr. Phillips to intervene in the Minnesota action. *Kassover v. Computer Depot, Inc.*, 691 F.Supp. 1205, 1214 (D.Minn.1987), *aff'd*, 902 F.2d 1571 (8th Cir.1990).

Act claims were time-barred and summary judgment was granted; dismissing Phillips' § 11 and § 12(2) claims.

According to the Report, five factors indicated that had Mr. Phillips used reasonable diligence he could have discovered the alleged fraud prior to September 7, 1985. Report, at 8–10. First, although Mr. Phillips alleges in his complaint that Kidder fraudulently failed to advise stock purchasers of an expected "shakeout" in the personal computer industry, Mr. Phillips acknowledges that he began hearing of such a shakeout by November 1984, and suspected it might be responsible for CDI's poor performance. Deposition of Robert D. Phillips ("Phillips Tr."), attached as Exhibit "5" to Affidavit of Linda C. Goldstein, sworn to on February 1, 1991 ("Goldstein Aff."), at 101–102. Second, in January, 1985, Mr. Phillips read a Dain, Bosworth research report further describing the shakeout. Phillips Tr., at 144–46. Third, when Mr. Phillips read CDI's Annual Report, dated May 31, 1985, he learned that many of CDI's competitors had lost significant sums during the preceding year. Phillips Tr., at 134.

The Report also discussed two objective factors which should have triggered inquiry by Mr. Phillips prior to September 7, 1985. Between July 1984 and June 1985, the price of CDI stock fell from $9.00 to $4⅞ per share. According to the Report, such a precipitous decline puts shareholders like Mr. Phillips on notice that something is wrong. See Gaudin v. KDI Corp., 576 F.2d 708, 712 (6th Cir.1978); Berry Petroleum Co. v. Adams & Peck, 518 F.2d 402, 410–411 (2d Cir.1975). Although the Report recognized that financial reverses can result from a host of other causes other than fraud, and that the cause of a steep decline in price may be ambiguous, see Briskin v. Ernst & Ernst, 589 F.2d 1363, 1368 (9th Cir.1978), it concluded that when, as here, the alleged fraud is a falsely optimistic prediction of economic performance, disastrous results surely alert the stockholder that the prediction was faulty and obligate him to inquire why that was the case. Report, at 9. Moreover, according to the Report, in this case the stock decline was not the lone indicator of potential fraud, but rather was accompanied by the other factors discussed.

Finally, the Report found that the media were publishing stories concerning the shakeout of the personal computer industry well in advance of the time that the plaintiff is deemed to have filed this action. See Kassover, 691 F.Supp. at 1211. The reporting included two stories in the Washington Post, one in the Wall Street Journal, one in the New York Times, and one in Barron's. See Goldstein Aff., Exs. "20"–"24". In addition, CDI's quarterly results were reported in the New York Times. See Goldstein Aff., Exs. "7", "12". According to the Report, the public availability of such information is one factor in determining how diligent a plaintiff was in investigating a possible fraud. See Berry Petroleum, 518 F.2d at 410; Zola v. Gordon, 701 F.Supp. 66, 70 (S.D.N.Y.1988).

Further, the Report found no merit to Mr. Phillips' arguments that he was deterred from investigating any potential fraud by statements from CDI sales representatives at its Tyson's Corner, Virginia outlet that sales were good, and by the Dain, Bosworth report dated October 1984, which was sent to him by his broker at Kidder. The Report concluded that no investor could reasonably rely on the representations of product salesmen with regard to the company's overall financial health. Moreover, the Dain, Bosworth report should have alerted Phillips to the problems he claims were omitted from the Prospectus. Although the Dain, Bosworth report suggested that CDI would survive, the Magistrate Judge concluded that it should have put Mr. Phillips on notice of the potential fraud because it acknowledged the likelihood of the "shakeout" in the industry which Phillips claims was omitted from the Prospectus. Report, at 10–11.

The Report thus concluded that a variety of factors should have alerted Mr. Phillips to the possibility that the optimistic and allegedly misleading predictions in the Prospectus were false. As such, it recommended to this Court that summary judgment be granted on these claims as no

genuine issue of material fact existed as to whether prior to September 7, 1985, Phillips knew of, or by the exercise of reasonable diligence could have discovered, the alleged misrepresentation.

Mr. Phillips objects to this recommendation. He contends that he did not know of, nor by the exercise of reasonable diligence could he have known of, the material misstatements and omissions made by Kidder prior to September 7, 1985. He thus argues that summary judgment based on statute of limitations grounds is inappropriate. Phillips also contends that the Report placed too much emphasis on his awareness of the shakeout in the personal computer industry in making its determination that he was on inquiry notice of the alleged fraud. According to Phillips, the Report essentially determined that the heart of his complaint was Kidder's failure to disclose the upcoming shakeout, and based upon this determination, concluded that subsequent events more than a year prior to suit should have alerted Phillips to investigate and discover the shakeout. Plaintiff's Objections to Magistrate's Report and Recommendation ("Pl.Ob."), at 6. The Court agrees that the Report overemphasized the importance of Phillips' awareness of the shakeout, and improperly recommended summary judgment as to Phillips' § 11 and § 12(2) claims.

It is true that the complaint alleges that certain statements in the Prospectus are false because Kidder "knew or should have known, that a shake-out in the personal computer market was then occurring ...," Complaint at ¶ 27(i)–(iii), and that the complaint alleges that the Prospectus "failed to disclose adequately the rapidly changing material adverse circumstances of the personal computer market ... which caused a shake-out in the personal computer market." Complaint at ¶ 28(i). It is also impossible to argue that Mr. Phillips was not aware of the industry-wide shakeout prior to September 7, 1985. His deposition testimony indicates that he was aware of such a shakeout by November 1984. In commenting on the decline in the price of his CDI stock that had taken place by November 1984, Mr. Phillips stated that "I began

hearing about something called a shakeout in the computer—in the personal computer sales, retail outlets, that there was a shakeout." Phillips Tr., at 101–102. To determine, however, as the Report did, that the essence of Phillips' complaint is Kidder's failure to disclose the upcoming shakeout, and that awareness of this shakeout indicates that Phillips was on inquiry notice of the alleged fraud prior to September 7, 1985, is to take an unduly restrictive view of Phillips' claims.

Phillips' complaint does not simply allege that Kidder omitted to mention the coming shakeout, but rather that Kidder should have disclosed the effect of the shakeout on CDI. Paragraph 27 of the complaint, which asserts the alleged false representations made in the Prospectus, and paragraph 28, which asserts the alleged fraudulent omissions, indicate that failure to disclose the shakeout itself is not the underlying basis of Phillips' claims. In paragraph 27, Phillips alleges that the representations by Kidder as to profitability, competitiveness and ability to expand were materially false and misleading because Kidder knew, or should have known, that a shakeout in the personal computer market was then occurring. Thus, according to the complaint, disclosure of the shakeout was only important because of the impact it would have on CDI's profitability, competitiveness and ability to expand. Further, paragraph 28(i) does not simply allege that the Prospectus omitted to mention the shakeout. Instead, it asserts that CDI failed to disclose the adverse circumstances of the personal computer industry which caused a shakeout in the personal computer market. Moreover, Kidder itself recognizes that Phillips' allegations of fraud are not limited solely to failure to disclose the shakeout. In its Memorandum of Law In Support of Defendant's Motion For Summary Judgment and to Stay Discovery ("Def.Mem."), Kidder states that "plaintiff submits that Kidder, Peabody should have disclosed that Computer Depot *would not survive* a 'shakeout' in the personal computer market, and that it would file for bankruptcy

17 months later." (emphasis added) Def. Mem. at 1–2.

Since the thrust of Phillips' complaint is not the failure to disclose the impending shakeout in the personal computer industry, but rather the shakeout's effect on CDI, Mr. Phillips' awareness of such a shakeout, standing alone, is not sufficient to establish that he was on inquiry notice of the fraud prior to September 7, 1985. The question for the Court thus becomes whether there is a genuine issue of material fact as to whether Mr. Phillips knew of, or through the exercise of reasonable diligence, should have discovered, the alleged fraud prior to September 7, 1985, despite his awareness of the shakeout. The Court concludes that a genuine issue of material fact exists as to this matter, and therefore Kidder's motion for summary judgment as to Phillips' § 11 and § 12(2) claims must be denied.

Summary judgment is inappropriate because this Court may not hold, as a matter of law, that Mr. Phillips, as an average investor, should have been alerted to the alleged material misstatements and omissions prior to September 7, 1985. In fact, the evidence submitted to and relied upon by the Magistrate Judge appears to indicate that Mr. Phillips was not put on inquiry notice of the fraud more than a year before this action is deemed commenced, and at the very least the evidence demonstrates that there is a genuine issue of material fact as to whether Mr. Phillips should have been alerted to the fraud before September 7, 1985.

The record indicates that Phillips had knowledge of the shakeout by November 1984. The record also indicates that CDI reported reduced prices and gross profits in each Form 10–Q for the quarters ending May 4, 1985, and August 3, 1985. In addition, it is undisputed that CDI disclosed a "softening" of the market in its Form 10–Q for the quarter ended May 4, 1985. Finally, it is uncontroverted that by June 10, 1985, the price of CDI's stock fell from $9.00 to $4⅞ per share, and by September 7, 1985, the media had published several stories on the existence of intense competition and a resulting shakeout in the personal computer industry.

The availability of this information, however, does not warrant a finding that Phillips was alerted to the alleged fraudulent misrepresentations and omissions as a matter of law, especially in light of the fact that reports disseminated by Kidder conveyed the impression to investors that CDI was in a position, relative to its competitors, to escape the adverse consequences of the shakeout and continue to grow and prosper. Thus, the Court finds that none of the factors in the record and relied upon by the Magistrate Judge, taken separately or together, indicate, as a matter of law, that Phillips was on inquiry notice prior to September 7, 1985.

The Dain, Bosworth report, Goldstein Aff., Exhibit "19", which Phillips received between November 1984 and January 1985, Phillips Tr., at 145–46, did disclose the likelihood of a shakeout in the personal computer industry, but on the whole is decidedly optimistic about CDI's future. For example, the report states on page one that CDI "has several competitive advantages, including instant credibility, strong customer traffic, demographics, and credit card availability." It goes on to say that CDI "faces three years of very strong earnings expansion." The report concludes by stating that:

> Computer Depot has carved an interesting niche in the personal computer retailing market, and it appears to be a niche the Company can exploit for significant growth over the next three years. In that period, we would expect average annual earning growth of 40%–50% ... While we expect Computer Depot's earnings growth over the next three years to exceed the annual earnings growth of the average specialty retailer, ... which would argue for more than a 15 multiple on earnings, we believe an offset to a substantially higher multiple is the low visibility of Computer Depot's earnings growth beyond, say, 1986. By then, we would expect the Company will have entered most major cities, and we suspect the personal computer retailing market

will have undergone a shakeout, ... *and players without Computer Depot's "staying power" having exited the market.* Hence, our expectation would be that Computer Depot's mid-teens price/earnings multiple will be maintained and that the stock will be primarily earnings driven. (emphasis added)

Dain, Bosworth report, Goldstein Aff., Exhibit "19", at 3–4.

Phillips' deposition testimony confirms that this report did not, as a matter of law, alert him to the alleged fraud. In fact, it appears to have encouraged him to purchase 100 more shares of CDI stock and led him to believe that CDI would survive despite the shakeout in the industry. In his testimony Phillips testifies that he recalls "reading about the shakeout and that Computer Depot would be able to survive the shakeout." Phillips Tr., at 147. Additionally, in describing what he had heard about the shakeout, Phillips stated that:

Just that there was a lot of competition and that Computer Depot would be able to compete very effectively because of the fact that they were—their location in these department stores and their special arrangement with IBM.

I am not sure if it was around that— somewhere around that time they announced that they were going to start slimming down and get leaner an meaner, so to speak. They wanted to close some of their outlets and become more competitive and that they would be able to make it through the shakeout.

I believe I may have received a research report ... saying something to the effect that Computer Depot would be able to compete during the shakeout.

Phillips Tr., at 103–104. Phillips also testified that the Dain, Bosworth report played a part in his decision to purchase additional shares of CDI stock. According to Phillips, the conclusion of the report, which discussed CDI's staying power, "led me to believe that I could eventually recoup my losses and possibly make a profit on my investment." Phillips Tr., at 148.

Additionally, CDI's 1985 Annual Report, which Phillips received prior to September 7, 1985, may not, as a matter of law, be deemed to have alerted Phillips to the alleged fraud. The Annual Report discloses that CDI's competitors lost considerable sums in 1985, but says nothing about CDI's losses. In fact, the Report states that CDI was successful in executing its marketing strategy, and goes on to say that "we made money doing it as well while many computer retailers lost considerable sums during that same period. In addition, by entering 4 new centers, we were one of the few computer retailers that tracked on its growth plans." CDI Annual Report, Goldstein Aff., Exhibit "8", at 2.

Further, the decline in the price of CDI stock from $9.00 to $4.00 does not conclusively establish that Phillips was aware of the alleged fraud. Financial reverses can result from a host of causes other than fraud, and a steep decline in stock price may well be ambiguous. *Briskin v. Ernst & Ernst*, 589 F.2d 1363, 1368 (9th Cir.1978). The cases relied upon by the Magistrate Judge do not warrant a different result. In *Gaudin v. KDI Corp.*, 576 F.2d 708, 712 (6th Cir.1978), and *Berry Petroleum Co. v. Adams & Peck*, 518 F.2d 402, 410 (2d Cir. 1975), where it was held that there were sufficient facts to put the plaintiffs on inquiry notice of alleged fraudulent activities, there was not merely a decline in stock price, but rather other factors, not present here, namely, SEC trading suspensions, failure to list the stock on the New York Stock Exchange despite assurances to the contrary, and numerous lawsuits by the SEC and private parties for violation of the federal securities laws.

Finally, newspaper articles which referred to competition and a shakeout in the personal computer industry, and the publication of CDI's quarterly results in the New York Times, were not sufficient to put Mr. Phillips on inquiry notice of the alleged fraud. The Report was correct in stating that the public availability of such information is one factor in determining how diligent a plaintiff was in investigating a possible fraud. *See Berry Petroleum*, 518 F.2d at 410; *Zola v. Gordon*, 701 F.Supp. 66, 70 (S.D.N.Y.1988). However, in *Zola v.*

*Gordon,* it was well publicized federal indictments and convictions that put plaintiffs on inquiry notice of a fraud, and in *Berry Petroleum* an SEC action was publicized in financial newspapers. Further, as discussed above, in *Berry Petroleum* such publication was in addition to SEC trading suspensions, a precipitous decline in stock, and other lawsuits by the SEC and private parties. *Berry Petroleum,* 518 F.2d at 410. In this case, the articles merely informed Phillips of the existence of a shakeout which, as discussed above, is not the essence of Phillips' allegations of fraud. Moreover, these articles did not trigger a duty of inquiry by Phillips since Kidder was simultaneously disseminating information which stated that CDI was in a position to survive and prosper despite the shakeout.

The Court thus concludes that there is a genuine issue of material fact as to whether Phillips knew of, or by the exercise of reasonable diligence should have known of the alleged fraud. Accordingly, the Court rejects the Report's recommendation that summary judgment be granted as to Phillips' 1933 Act claims, and denies Kidder's motion for summary judgment on these claims.

### B. *The 1934 Act Claim*

Kidder also contends that Phillips' § 10(b) claim was time-barred. The Magistrate Judge disagreed with Kidder's contention and recommended that Kidder's summary judgment motion as to Phillips' § 10(b) claim be denied. The Court agrees with the Magistrate Judge that Phillips' claim is not barred by the applicable statute of limitations, and that summary judgment is not appropriate, but for reasons other than those set forth in the Report.[5]

In *Ceres Partners v. GEL Associates,* 918 F.2d 349 (2d Cir.1990), the Second Circuit abandoned its previously established rule of borrowing and applying state statutes of limitations to claims under § 10(b)

of the 1934 Act. In doing so, it adopted a uniform federal limitation period which requires that such actions be commenced within one year after discovery and within three years after the occurrence of the violation. *Ceres* did not address whether its ruling was to be retroactively applied. In *Welch v. Cadre Capital,* 923 F.2d 989 (2d Cir.1991) ("Welch I"), however, the Second Circuit held that the one year/three year statute of limitations adopted in *Ceres* should not be applied retroactively.

In *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), the Supreme Court agreed with the Second Circuit's decision in *Ceres,* and concluded that a uniform federal limitation period should govern claims brought under § 10(b) and Rule 10b–5. Thus, as in *Ceres,* the Court held that "litigations instituted pursuant to § 10(b) and Rule 10b–5 ... must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation." *Id.* 111 S.Ct. at 2782. Significant to the present case, the Supreme Court gave retroactive application to the new rule, applying it to the litigation in which the new rule was announced. *Id.* at 2782–83.

The Supreme Court elaborated on *Lampf's* retroactive effect in *James B. Beam Distilling Co. v. Georgia,* —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), decided the same day as *Lampf.* In *James B. Beam,* the Court held that when a court applies a new rule of civil law retroactively in the case in which the new rule is announced, as the Court did in *Lampf,* it is error not to apply that new rule retroactively in all similar pending cases. In light of *Lampf* and *James B. Beam,* the Supreme Court vacated and remanded *Welch I,* the conflicting Second Circuit case. In its reconsideration of *Welch I,* the Second Circuit reversed its earlier position and conclusively held that "the retroactive ruling in *Lampf* is to be

**5.** The Magistrate Judge's Report was issued prior to the Supreme Court's recent rulings in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), and *James B. Beam Distilling Co. v. Georgia,* —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991).

applied retroactively to all cases not finally adjudicated on the date when *Lampf* was decided." *Welch v. Cadre Capital,* 946 F.2d 185 (2d Cir.1991) ("Welch II").

■ Thus, it is clear that the one year/three year limitations period adopted in *Lampf* must be applied to the present case. *See e.g. Philip Morris Capital Corporation v. Century Power Corp.,* 778 F.Supp. 141 (S.D.N.Y.1991); *Brown v. The Hutton Group,* 775 F.Supp. 692 (S.D.N.Y.1991); *Burke v. Jacoby,* 1991 WL 221417, 1991 U.S.Dist. LEXIS 14617. Retroactive application of the one year/three year limitations period, however, does not necessitate a finding that Phillips' § 10(b) claim is time-barred as a matter of law.[6]

■ There is no question that Phillips brought suit within three years of Kidder's alleged fraudulent conduct. Phillips is deemed to have brought suit on September 7, 1986, and the Prospectus, which is the basis for Phillips' claims, was issued on July 12, 1984. Thus, the only question remaining is whether Phillips commenced his action within one year of the discovery of the alleged fraud. Kidder contends that Phillips' § 10(b) claim is time-barred because "it is undisputed that he knew of the personal computer market shakeout and of

CDI's poor performance—the facts underlying the alleged violation of § 10(b)—more than 2½ years before bringing suit." Letter brief to the Court by Kidder's attorney Linda Goldstein, dated July 9, 1991. The Court disagrees. As discussed above in addressing Phillips' 1933 Act claims, the Court finds that there is a genuine issue of material fact as to whether Phillips discovered the alleged fraud more than one year before he is deemed to have brought suit. Accordingly, Kidder's motion for summary judgment as to Phillips' § 10(b) claim is denied.

### III. Allegations of Fraud

■ Kidder contends that even if Phillips' claims are timely, he has nevertheless failed to allege an actionable misrepresentation or omission, and therefore summary judgment should be granted as to Phillips' § 11, § 12(2) and § 10(b) claims. According to Kidder, the three purported misrepresentations in the Prospectus were merely statements of opinion, couched in appropriately qualified terms. Similarly, as to the alleged omissions, Kidder contends that the Prospectus disclosed in detail the risks for an investor.

The Magistrate Judge recommended, however, that Phillips' § 10(b) claim should

---

6. On November 27, 1991, Congress sent the President a Bank Reform Bill (S 543) which was passed by both Houses of Congress. The President has not yet acted on the Bill. Since Congress adjourned on November 27, 1991 and will not reconvene until January, and the President has not yet signed the Bill, the Bill, as of this date, is not yet law. U.S. Const. art. I, § 7.

If approved and signed by the President, however, § 476 of this Bill would directly reverse the retroactive portion of the *Lampf* decision. Specifically, § 476 would protect securities fraud cases filed by investors under § 10(b) prior to the Supreme Court's *Lampf* decision of June 19, 1991, which adopted the one year/three year limitation period.

Despite these developments, it is not necessary for the Court to reserve judgment until the President acts on the Bill because the Court's decision that Phillips' § 10(b) claim is not time-barred as a matter of law will be unaffected by the President's action on the Bill. If the Bill is not enacted, *Lampf* will continue to be applied retroactively in accordance with the aforementioned cases. But, as discussed in this section,

retroactive application of *Lampf* does not warrant a dismissal of Phillips' § 10(b) claim. If the Bill is enacted, thereby eliminating the retroactive application of the one year/three year limitations period, this case would be governed by pre-*Ceres* law, and the statute of limitations would be borrowed from the pertinent law of the forum state. *See e.g., Armstrong v. McAlpin,* 699 F.2d 79, 86–87 (2d Cir.1983). New York's applicable limitations period is six years from the date the cause of action accrued or two years from the date when the fraud was, or with reasonable diligence should have been discovered. *See Armstrong v. McAlpin,* 699 F.2d at 86–87. Since this statute of limitations is more generous than the one adopted by *Lampf,* there is no question that Phillips' § 10(b) claim would survive the application of New York's limitation period. Thus, Kidder's motion for summary judgment as to Phillips' § 10(b) claim would be denied whether or not *Lampf* is applied retroactively, and therefore the Court will not wait until the President acts on this Bill to render its decision.

not be dismissed.[7] The Court agrees for the reasons set forth in the Report and adopts the Magistrate Judge's recommendation. For the same reasons, the Court concludes that Phillips' § 11 and § 12(2) claims should not be dismissed as a matter of law. Thus, Kidder's motion for summary judgment on the grounds that Kidder failed to allege an actionable misrepresentation or omission, is denied.[8]

### IV. Pendent State Law Claim

■ Since Phillips' federal law claims have not been dismissed, this Court will retain pendent jurisdiction over Kidder's state law claim. Pendent jurisdiction exists whenever there is a claim "arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their authority," U.S. Const. art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Before a federal court exercises pendent jurisdiction, however, it must determine that the state and federal claims derive from a common nucleus of operative fact. *Id.* If a court finds that a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, the federal court has the power to hear all the claims. *Id.*

■ In this case, Phillips' state claim arises out of the Prospectus that serves as the basis for his federal claims. As such, this Court has the power to exercise pendent jurisdiction over the state claim.

### CONCLUSION

For the reasons set forth above, Kidder's motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, is denied as to Phillips' first, second and third claims for relief, and the Court will retain pendent jurisdiction over Phillips' state law claim. Discovery in this matter shall proceed, and following the completion of discovery, Kidder shall be permitted to renew its motion for summary judgment if warranted by the record.

SO ORDERED.

---

**7.** The Report discussed only whether Phillips' § 10(b) claim alleged an actionable misrepresentation or omission because it recommended that Phillips' § 11 and § 12(2) claims be dismissed for failure to comply with the statute of limitations. However, since Phillips must show a misrepresentation or omission of material fact in order to state a claim for relief under § 11 and § 12(2) of the 1933 Act as well as § 10(b) of the 1934 Act, the Report's analysis as to Phillips' § 10(b) claim is similarly applicable to his § 11 and § 12(2) claims. Because the Report recommended denial of Kidder's motion for summary judgment on Phillips' 10(b) claim, it is irrelevant for purposes of this motion that § 11 and § 12(2) liability *may* result from negligent conduct, misstatements or omissions, *see Billet v. Storage Technology Corp.*, 72 F.R.D. 583, 585 (S.D.N.Y.1976), whereas § 10(b) liability requires a showing of scienter by the plaintiff.

*Luce v. Edelstein*, 802 F.2d 49, 55 (2d Cir.1986) (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 425 U.S. 185, 96 S.Ct. 1375 (1976)).

**8.** *In re Chaus Securities Litigation* does not warrant a different result. In that case the Court dismissed plaintiff's § 10(b) claim because "the complaint states no factual basis to suggest that the defendant[ ] knew or should have known that these prophesies were false when made...." In this case, however, the Magistrate Judge was correct in determining that until discovery has been completed, it cannot be known whether there are any disputed issues of material fact concerning the factual basis for the predictions contained in the Prospectus and Kidder's good faith in communicating them. Report, at 20–21.